CÉSAR R. MIRANDA, COMISIONADO ELECTORAL DEL PARTIDO POPULAR DEMOCRÁTICO, demandante y peticionario, *v.* COMISIÓN ESTATAL DE ELECCIONES, demandada y recurrida, y el DEPARTAMENTO DE EDUCACIÓN, interventor y recurrido, DAMARIS B. MANGUAL VÉLEZ y OTROS, apelados, *v.* COMISIÓN ESTATAL DE ELECCIONES, apelada, y el DEPARTAMENTO DE EDUCACIÓN, interventor y apelante.

*Números:* CC-96-354        *Resueltos:* 25 de octubre de 1996
　　　　　CC-96-356

*Gilberto Concepción Suárez,* abogado de los apelados y peticionarios; *Gerardo De Jesús Annoni,* abogado del peticionario; *David Rivé Rivera,* abogado de la Comisión Estatal

de Elecciones; *Carlos Lugo Fiol, Procurador General*, y *Francisco J. González Muñiz, Procurador General Auxiliar*, abogados del Departamento de Educación.

PER CURIAM: Los recursos que ante nuestra consideración se han presentado solicitan que reinstalemos una orden dictada por el Tribunal de Primera Instancia en un asunto que versa sobre las disposiciones que nuestro ordenamiento jurídico ha establecido para evitar que las agencias gubernamentales promuevan la elección de candidatos o de partidos políticos durante el período eleccionario.

## I

Los hechos que hoy dan lugar a las peticiones ante nos se originan en enero de 1996 cuando el Departamento de Educación sometió para la consideración de la Comisión Estatal de Elecciones (en adelante C.E.E.) varios anuncios para su aprobación, en cumplimiento de lo dispuesto en el Art. 8.001 de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. sec. 3351. La C.E.E. refirió la solicitud a su Junta de Anuncios, según lo establecido por reglamento. En este proceso, los representantes de los tres (3) partidos políticos coincidieron en que el contenido de los anuncios era publicable. No obstante, los representantes del Partido Independentista Puertorriqueño (en adelante P.I.P.) y del Partido Popular Democrático (en adelante P.P.D.) entendieron que el *logo* y el *lema* del Departamento de Educación, que consistía en una estrella y la frase "a cada niño un futuro, a cada niño su estrella", debían eliminarse de los anuncios. El representante del Partido Nuevo Progresista (en adelante P.N.P.) votó a favor de que los anuncios fueran aprobados íntegramente y sin restricción alguna. Al no obtenerse la unanimidad en la votación de los miembros de la Junta, correspondió decidir a su Presidente, según dispone la Sec. 2.4 del Reglamento para el Control de Gastos de Difusión Pública del Gobierno de 15 de noviembre de 1995 (en ade-

lante el Reglamento). El dictamen del Presidente autorizó la publicación, aunque condicionada a la eliminación del *logo* y el *lema* objetados. Se fundamentó en la conclusión de que la estrella se ha convertido en un detalle visual utilizado por el partido en el poder y que esconde un mensaje político.

Inconforme con la decisión de la Junta de Anuncios, el Comisionado Electoral del P.N.P. acudió al seno de la C.E.E. Allí, el resultado de la votación fue igual al de la Junta de Anuncios, produciéndose una división entre los representantes del P.P.D. y el P.I.P., de un lado, y el Comisionado Electoral del P.N.P. de otro. Ante esta situación, correspondió al Presidente de la C.E.E., Hon. Juan R. Melecio, resolver la controversia, conforme lo dispone el Art. 1.014(e) de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3014(e). Éste reconoció que la decisión de la Junta de Anuncios parecía ser *acertada*, pero la revocó por entender que una sentencia emitida en 1992, por el entonces Tribunal Superior, Sala de San Juan (Hon. Zadette Bajandas, Juez),[1] cumplía con todos los requisitos para obligarle conforme a la doctrina de cosa juzgada. Mediante ella, el tribunal revocó la prohibición decretada hace más de cuatro (4) años por la C.E.E. del referido lema y estrella en los anuncios hechos por el Departamento de Educación durante el año electoral pasado.

A tenor de las disposiciones del Art. 1.016 de la ley, 16 L.P.R.A. sec. 3016a, acudieron por separado el P.P.D. y el P.I.P. al Tribunal de Primera Instancia, Sala Superior de San Juan, para solicitar la revocación de dicha decisión administrativa. El tribunal determinó, de entrada, que la sentencia de 1992 no tenía autoridad de cosa juzgada en el caso ante su consideración. En el juicio *de novo* celebrado, las partes presentaron prueba testifical y documental.

---

[1] *Departamento de Educación v. Comisión Estatal de Elecciones*, Caso Civil Núm. KPE 92-0325(906), Sentencia de 4 de noviembre de 1992. Por no haberse recurrido de dicha sentencia a este Tribunal, no tuvimos la oportunidad de *expresarnos entonces en relación con la controversia.*

Como parte de la evidencia presentada por el P.I.P. —admitida sin objeción de parte alguna— se incluyeron unas fotos de anuncios del Departamento de Educación colocados en forma de rótulos frente a las escuelas del país, que muestran la utilización de una estrella dorada con estela (*stardust*); una foto de las oficinas centrales de dicho Departamento en Hato Rey que ilustra la estrella de luces ubicada en el techo de ese edificio, y unas fotos del Comité Central del P.N.P. pintado en azul con una enorme estrella blanca seguida de rayas azul claro que simulan un resplandor.

También se admitió el testimonio del Lcdo. Manuel Rodríguez Orellana en torno al uso que le dio el P.N.P. a la estrella en su campaña plebiscitaria de 1993, posteriormente y en la actualidad. Concluyó que la estrella se ha convertido en un símbolo político del P.N.P. El testimonio del Sr. Esteban Rodríguez Estrella fue igualmente presentado y admitido a los efectos de establecer que durante los últimos tres (3) años, el P.N.P. ha utilizado la palma y la estrella como parte de sus campañas políticas, y sus afiliados han utilizado prendedores en forma de estrella en la solapa de su vestimenta para identificarse con dicho partido.

Finalmente, el testimonio del único testigo del Departamento de Educación, el Sr. Pedro Serrano, maestro de español, fue a los efectos de establecer que se utiliza la estrella como método de motivación y recompensa a los estudiantes en el salón de clases por un trabajo bien hecho. Se estipuló, además, por las partes que la estrella, como icono del logo, y el lema del Departamento de Educación se originaron durante la administración pasada del P.P.D., y que el uso de la estrella en el ámbito educativo tiene múltiples significados simbólicos.

El 26 de agosto el tribunal de instancia (Hon. Ángel Hermida, Juez) emitió una sentencia en la que revocó la decisión del Presidente de la C.E.E. e instauró la decisión

de la Junta de Anuncios que prohibía al Departamento de Educación utilizar la estrella en su logo y el lema "a cada niño un futuro, a cada niño su estrella" en sus anuncios durante el período de la veda electoral. El tribunal extendió la prohibición a las estrellas que se encuentran sobre el edificio central del Departamento de Educación y aclaró que, para los efectos de la prohibición, " 'anuncio' [debe entenderse] en su sentido más general y amplio, como que incluye no sólo los anuncios en la prensa y televisión, u otros medios tradicionales de difusión, sino también cosas tales como rótulos en frente de edificios (nota omitida)". Caso Núm. CC-96-356, Informe del Procurador General, pág. 5. El foro dispuso expresamente que la sentencia dictada no prohibía el uso de estrellas en el salón de clases en su función tradicional.

De la determinación anterior acudió el Departamento de Educación al Tribunal de Circuito de Apelaciones mediante un recurso de *certiorari* y solicitó simultáneamente que en auxilio de su jurisdicción se paralizaran los efectos de la sentencia recurrida. Éste ordenó la suspensión de los efectos de la sentencia recurrida y procedió a analizar y resolver el recurso en los méritos.

El Departamento de Educación imputaba la comisión de tres (3) errores por parte del tribunal de instancia: (1) erró al decretar que la sentencia de 1992 no constituía una cosa juzgada; (2) erró al evaluar y rechazar el testimonio del testigo del Departamento de Educación, y (3) erró al determinar que para que se viole el citado Art. 8.001 es suficiente que la acción tenga el efecto vedado, independientemente del propósito de la agencia al actuar.

El Tribunal de Circuito de Apelaciones entendió que ninguno de los errores señalados se cometieron y que el foro de instancia dictaminó con corrección. Sin embargo, concluyó que, en lo concerniente a la prohibición de los rótulos ubicados frente a los edificios del Departamento de Educación —incluyendo escuelas— y a las estrellas sobre

las oficinas centrales de este Departamento, el tribunal de instancia

> ... consideró y adjudicó un asunto o controversia relacionada con anuncios que, no habiéndose suscitado ni sometido a la consideración de la CEE como organismo administrativo, éste no había podido considerarlo, evaluarlo y adjudicarlo, independientemente de que tuviese jurisdicción o no para ello, cuestión que era de su competencia determinarlo en primera instancia.[2]

De dicha determinación acuden ante nos, por separado, los peticionarios de epígrafe para solicitar la revisión de la sentencia dictada por el Tribunal de Circuito de Apelaciones en cuanto a su revocación parcial de esta parte del dictamen del Tribunal de Primera Instancia (Hon. Ángel Hermida, Juez).

Alegan, en síntesis, la comisión de los errores siguientes:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL REVOCAR AL TRIBUNAL SUPERIOR EN CUANTO A LA REMOCIÓN DE LA ESTRELLA SOBRE EL TECHO DE LAS OFICINAS CENTRALES DEL DEPARTAMENTO DE EDUCACIÓN Y LA REMOCIÓN DEL LOGO Y LEMA DE DICHO DEPARTAMENTO DE LOS RÓTULOS FRENTE A [SUS FACILIDADES].
> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE CIRCUITO DE APELACIONES AL INTERPRETAR QUE EL CASO SE REDUCE A CUATRO ANUNCIOS SOMETIDOS ANTE LA COMISIÓN ESTATAL DE ELECCIONES Y NO AL USO DE UNA ESTRELLA POR EL DEPARTAMENTO DE EDUCACIÓN.
> Caso Núm. CC-96-356, Informe del Procurador General, pág. 6.

El 16 de octubre emitimos una resolución en la cual consolidamos los recursos y ordenamos a la C.E.E. y al Departamento de Educación que comparecieran a mostrar causa por la que no debíamos expedir el auto solicitado y revocar aquella parte de la sentencia del Tribunal de Circuito de Apelaciones que, a su vez, dejó sin efecto la orden del tri-

---

[2] Véase la sentencia recurrida, pág. 29.

bunal de instancia para la remoción de las estrellas ubicadas en el techo del edificio que alberga sus oficinas centrales y en rótulos frente a las escuelas del país.

Todas las partes han comparecido y estamos en posición de resolver. Ninguno de ellos cuestiona la determinación hecha por la Junta de Anuncios de la C.E.E. y refrendada, aparentemente, por el Presidente de dicha Comisión, al efecto de que el referido logo se ha convertido en un emblema utilizado por el partido en el poder para llevar un mensaje con fines proselitistas.

## II

El proceso de solicitud de autorización e impugnación de anuncios de las agencias se origina en la C.E.E. conforme a los Arts. 1.005, 1.015 y 8.035 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. secs. 3013,[3] 3015[4] y 3383,[5] respectivamente, y la Sec. 2.3 del Reglamento.[6] El proceso de revisión judicial de los asuntos ante la C.E.E. en lo referente a las impugnaciones de anuncios bajo la

---

[3] *"Sec. 3013. Funciones y deberes y facultades de la Comisión*

. . . . . . . .

"(e) Atender, investigar y resolver los asuntos o controversias que se sometan a su consideración por cualquier parte interesada." 16 L.P.R.A. sec. 3013(e).

[4] *"Sec. 3015. Jurisdicción, procedimientos*

"La Comisión tendrá jurisdicción original para motu proprio o a petición de parte interesada entender, conocer y resolver cualquier asunto o controversia de naturaleza electoral. ..." 16 L.P.R.A. sec. 3015.

[5] *"Sec. 3383. Jurisdicción de los organismos creados por este Subtítulo*

"Los organismos e instituciones creados mediante el presente Subtítulo, tendrán jurisdicción exclusiva en todo lo relativo a las facultades, obligaciones y deberes que le [sic] son impuestos en este Subtítulo y sus reglamentos. Además, ningún asunto o controversia de esta naturaleza estará bajo el ámbito investigativo o decisional del Procurador del Ciudadano ("Ombudsman"), establecido mediante las secs. 531 a 531y del Título 3." 16 L.P.R.A. sec. 3383.

[6] Sec. 2.3 (funciones de los oficiales examinadores):

"Los Oficiales Examinadores tendrán la encomienda de evaluar toda solicitud de autorización conjuntamente con todo documento o información que se presente en torno a la misma y de someter a la Comisión un informe que contenga la recomendación de la decisión que deberá adoptarse y emitirse." Reglamento para el Control de Gastos de Difusión Pública del Gobierno de 15 de noviembre de 1995, pág. 5 (en adelante el Reglamento).

veda electoral, queda establecido en el Art. 1.016 de la Ley Electoral de Puerto Rico, *supra.*([7]) Al examinar esta disposición estatutaria, encontramos que se trata de una revisión en la cual los tribunales de instancia tendrán que efectuar un *juicio "de novo".* Véase *P.N.P. v. Rodríguez Estrada, Pres. C.E.E.,* 123 D.P.R. 1, 31 (1988). Por lo tanto, vendrán obligados a celebrar una vista en su fondo, recibir la evidencia y hacer *sus propias determinaciones de hecho y conclusiones de derecho* al revisar las decisiones de la C.E.E. No se trata de una mera revisión limitada a cuestiones de derecho. *Vélez Quiñones v. Srio. de Instrucción,* 86 D.P.R. 755 (1962).

En el caso de epígrafe, ante la C.E.E. se llevó a cabo un procedimiento de solicitud de autorización y posterior impugnación de ciertos anuncios por alegadamente contener propaganda político-partidista sufragada con fondos públicos en año eleccionario, conforme lo proscribe el Art. 8.001 de la Ley Electoral de Puerto Rico.

Según surge de los hechos, se aprobó el contenido sustantivo de dichos anuncios, pero los Comisionados Electorales del P.I.P. y el P.P.D. objetaron la inclusión del logo y el lema del Departamento de Educación por éste alegadamente transmitir un mensaje proselitista. Así, la controversia que tuvo ante su consideración la Junta de Anuncios y el seno de la C.E.E. se circunscribió a determinar si el Departamento de Educación podía continuar utilizando el *logo* con la *estrella,* y su *lema* ("a cada niño un futuro, a cada niño su estrella") en *todos* aquellos anuncios que di-

---

([7]) *"Sec. 3016a. Revisión de las decisiones de la Comisión*

"Cualquier parte afectada por una resolución, determinación y orden de la Comisión Estatal podrá dentro de los diez (10) días siguientes a la notificación de la misma acudir ante el Tribunal Superior mediante la radicación de un escrito de revisión. "La parte promovente tendrá la responsabilidad de notificar copia del escrito de revisión a la Comisión Estatal y a cualquier parte afectada."

"El Tribunal Superior celebrará una vista en su fondo, recibirá evidencia y formulará las determinaciones de hecho y conclusiones de derecho que correspondan. El Tribunal deberá resolver dicha revisión dentro de un término no mayor de veinte (20) días, contados a partir de la fecha de sometida la misma." 16 L.P.R.A. sec. 3016a.

vulgaría durante el período dispuesto por el Art. 8.001, *supra*.

Así lo reconoció el Departamento de Educación en su comparecencia ante el Tribunal de Primera Instancia, al afirmar que "[l]as decisiones revocadas de la Junta de Anuncios *versan directamente con* [sic] *el uso de la estrella y la frase (lema) 'A cada niño un futuro...a cada niño una estrella' que constituyen el logo oficial* del Departamento de Educación de Puerto Rico". (Énfasis suplido.) Moción en solicitud de desestimación y memorando de derecho en apoyo de contención, págs. 1–2. En dicho escrito se repite continuamente *que la controversia ante la Junta de Anuncios* giró en torno al logo y que ésta "ordenó al Departamento de Educación de Puerto Rico que eliminara de sus anuncios la frase (lema) ... y la estrella dorada que le acompaña". Íd., pág. 3.

De otra parte, también la C.E.E. reiteró que el objeto de la controversia era la utilización del emblema del Departamento de Educación. Según la resolución de la C.E.E., por voz de su Presidente el Hon. Juan R. Melecio, ésta adoptó como obligatoria, por presumirla cosa juzgada, la sentencia de 1992 del entonces Tribunal Superior de San Juan. En aquel caso se dilucidaba si válidamente podía prohibirse el uso de *la estrella y el lema* del Departamento de Educación en *todos* sus anuncios, por constituir éstos un medio publicitario a favor del partido político en el poder a *tenor de las circunstancias imperantes en ese momento.* Aunque al aplicar el efecto de cosa juzgada al caso de autos, la C.E.E. se equivocó, pues ya existía el precedente establecido en *P.P.D. v. Gobernador I,* 139 D.P.R. 643 (1995),([8]) al adoptar

---

([8]) En 1992 el tribunal de instancia concluyó que el emblema del Departamento de Educación no podía mal interpretarse como que constituía un medio publicitario a favor del partido en el poder. Ahora, en exceso de cuatro (4) años más tarde, la propia Junta de Anuncios de la C.E.E. reconoció en el caso de autos que "no hay duda que la estrella se ha sometido [sic; debe decir "convertido"] en un detalle visual utilizado por el partido en el poder y que esconde un mensaje político". Así fue precisamente determinado por este Tribunal en el caso *P.P.D. v. Gobernador I,* 139 D.P.R. 643, 701 (1995), cuando expresamos lo siguiente:

la sentencia por referencia *reconoció que la decisión de la Junta de Anuncios privaba al Departamento de Educación de utilizar su logo.*

Por otro lado, en el juicio *de novo* se admitió prueba que, aunque no había sido presentada anteriormente ante la C.E.E., constituyó evidencia pertinente a los fundamentos originales de la impugnación de los anuncios. Véase *Granados v. Rodríguez Estrada I,* 124 D.P.R. 1, 19 (1989). Dicha pertinencia fue reconocida durante la etapa del proceso de revisión, ya que *las partes afectadas nunca objetaron* la presentación de las fotos del edificio central del Departamento de Educación (con su estrella en el techo) y de los rótulos frente a diversas escuelas del país. Exposición estipulada de la prueba, págs. 2–3.

De lo anterior es inescapable concluir que el Tribunal de Primera Instancia no se excedió del alcance de su autoridad revisora. Es preciso recordar que:

> La función central de la revisión judicial substantiva es asegurarse de que las agencias actúan dentro del marco del poder delegado y *consistentes con la política legislativa.* De ella emanan los controles del comportamiento administrativo. Por tal razón, la revisión judicial reviste extrema importancia. (Énfasis suplido.) D. Fernández Quiñones, *Derecho administrativo y Ley Uniforme de Procedimiento Administrativo Uniforme,* 1ra ed., Bogotá, Ed. Forum, 1993, pág. 525.

Un examen de la ley, de la prueba y del dictamen final demuestra que dicho tribunal propiamente fundamentó su decisión en una interpretación *de derecho.* A base de ésta, amplió el significado de los "anuncios" o "medios de

---

"... La utilización de símbolos o insignias de naturaleza político-partidista, tales como la palma y *la estrella,* ciertamente identificables con el P.N.P., es contraria al fin público que exige nuestro ordenamiento constitucional en la administración del erario y al axioma de paridad económica entre las fuerzas electorales que le sirve de norte." (Énfasis en el original suprimido y énfasis suplido.)

Vemos, pues, que varios meses antes de la decisión de la C.E.E. en este caso, este Tribunal había resuelto la referida controversia a la luz de los nuevos hechos y circunstancias que imperan en este momento: el uso de la mencionada estrella constituye un mensaje político-partidista.

difusión". El juez de instancia, al tener ante sí prueba demostrativa de la utilización de los elementos en controversia (logo y lema) en medios de difusión no convencionales, se vio obligado entonces a proceder a interpretar las disposiciones legales aplicables[9] para determinar si procedía la inclusión de los rótulos y la estrella luminiscente. Es decir, actuó acorde con los principios de revisión judicial, pues nuestro sistema dispone que las conclusiones de derecho son revisables en todos sus aspectos. La razón primordial es que los tribunales son la autoridad final en la interpretación de estatutos y, en cuestiones de derecho, poseen la facultad para revisar sin sujeción a un criterio o una norma. Fernández Quiñones, *op. cit.*, pág. 545; *Adorno Quiles v. Hernández*, 126 D.P.R. 191 (1990); *Febres v. Feijoó*, 106 D.P.R. 676 (1978).

Sin embargo, también se ha reconocido que las agencias son instrumentos necesarios para la interpretación de la ley, por lo que los tribunales prestarán su deferencia a éstas. *Quevedo Segarra v. J.A.C.L.*, 102 D.P.R. 87 (1974). En este sentido, hallamos en los autos, como prueba documental, un informe de la C.E.E. de 29 de enero de 1996, en el que se interpretó la Sec. 1.4(8) del Reglamento, pág. 3, en el contexto de una solicitud de aprobación de unos *prendedores* de la Compañía de Turismo en forma de estrella, acompañados de unas tarjetas con un

---

[9] Dispone el Art. 8.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3351:

"Se prohíbe a las agencias del Gobierno de Puerto Rico, la Asamblea Legislativa de Puerto Rico y a la Rama Judicial, que a partir del 1ro. de enero del año en que deba celebrarse una elección general y hasta el día siguiente a la fecha de celebración de la misma, incurran en gastos para la compra de *tiempo y espacio en los medios de difusión pública* con el propósito de exponer sus programas, proyectos, logros ...." (Énfasis suplido.)

El citado Reglamento establece, en su declaración de propósitos, que

"... tiene como propósito el reglamentar la prohibición sobre los gastos para la compra de tiempo y espacio en los medios de difusión pública, así como *de otros medios de difusión* de las Agencias del Gobierno de Puerto Rico." Reglamento, pág. 1.

Más adelante, en la Sec. 1.4(8) de este mismo Reglamento, pág. 3, se dispone:

"8. Medios de difusión – La radio, cine, televisión, periódicos, revistas, publicaciones periódicas y hojas sueltas."

mensaje. En dicho informe la Junta de Anuncios se expresó como sigue:

> Resulta curioso que quien hoy alega que carecemos de juris-
> dicción sometió los mismos para aprobación.
> Citando el voto explicativo del licenciado Concepción Suárez:
> "Difusión es la acción y el efecto de difundir. Esto ha sido así
> siempre. Lo que no ha sido igual es la definición…. Para 1991,
> sin embargo, la propia Real Academia Española varió su defi-
> nición para ampliarla: 'propagar o divulgar conocimientos, no-
> ticias, actitudes, costumbres, modas, etc.' "
> A tenor con esta definición entendemos que la estrella *en la
> forma utilizada* [como prendedor] es capaz de difundir, propa-
> gar y divulgar un mensaje de claro corte político partidista.
> Sin embargo, citan los que desean establecer que la Junta
> examinadora de Anuncios no tiene jurisdicción, el Reglamento
> para el Control de Gastos de Difusión Pública del Gobierno,
> aprobada por la CEE el 15 de noviembre de 1995, [que] define
> en su Sección 1.4 Inciso 8 medios de difusión. Dispone que será
> la radio, cine, televisión, periódicos, revistas, publicaciones pe-
> riódicas, y hojas sueltas. *Más que una definición la sección lo
> que hace es una enumeración. M[a]s no podemos aceptar que en
> esta época de grandes cambios tecnológicos de comunicación la
> lista sea limitativa y en exclusión de otros medios de difusión ….*
> Basta leer el alegato de Turismo para entender el éxito de un
> prendedor como medio de difusión al punto de alegar que su
> prohibición afectaría su campaña publicitaria.([10]) (Énfasis
> suplido.)

Con el beneficio de esta interpretación amplia que previamente la C.E.E. había emitido sobre la definición de "medios de difusión", válidamente el tribunal de instancia expandió la prohibición a toda forma de anuncio.([11])

---

([10]) Caso Núm. CEE-SA-96-183 y 232 (Compañía de Turismo, peticionaria).

([11]) Más aún, en este sentido, el tribunal venía obligado a interpretar el citado Art. 8.001 y el Reglamento de manera compatible con el propósito del legislador al promulgar la Ley Electoral de Puerto Rico. De lo contrario, carecerían de validez las disposiciones reglamentarias y las interpretaciones administrativas.

" '… [c]uando la legislatura delega en una junta o personas poderes para pro-mulgar reglamentos [sic] éstos, para ser válidos, no pueden estar *en conflicto con las normas establecidas en la ley.* … El fin perseguido al delegar el poder de reglamen-tación no puede ser otro que el de implementar la ejecución de la ley, pero nunca puede ese poder ejercitarse en tal forma que sustituya el criterio del legislador por el de una junta o persona autorizada a reglamentar.'

Resulta también inmeritorio el planteamiento que trata de distinguir cada anuncio de los que originaron el pleito, y éstos a su vez de cualquier otro que contenga el mismo emblema. De lo que se trata es de unos símbolos distintivos, estándares, repetitivos, que constituyen un logo. Por ello, una vez impugnado dicho logo y lema, y determinado el significado o mensaje político subyacente que contiene, no es propio tratar de distinguir lo que es idéntico, fundamentándose en el medio de publicidad que se haya utilizado.

■ Podría también resultar en extremo perjudicial a los propósitos de la prohibición contenida en el Art. 8.001 de la Ley Electoral de Puerto Rico, *supra*, el que cada vez que se presente un anuncio ante la C.E.E. para su aprobación ésta resolviera de modo incompatible; es decir, que en relación con el asunto que nos ocupa —la estrella— la C.E.E. la permitiera en algunas situaciones y en otras la prohibiera. No sólo es razonable asumir que la C.E.E. resolverá de forma compatible con un asunto en específico, sino que también la C.E.E. tiene la facultad para asegurar dicha constancia al emitir órdenes que trasciendan el anuncio en relación con el cual se haya solicitado aprobación.

Así lo permite expresamente la Ley Electoral de Puerto Rico al disponer, en lo pertinente, que la C.E.E.,

... [e]n el desempeño de [sus funciones], tendrá, en adición [sic] a cualesquiera otros dispuestos en este subtítulo, los siguientes deberes:

. . . . . . . .

(f) Interponer cualesquiera remedios legales que estimare necesario para llevar a cabo y hacer efectivo los propósitos de este Subtítulo. Art. 1.005 de la Ley Electoral de Puerto Rico, *supra*.

"Si bien los recurrentes tienen la facultad primaria de implementar mediante reglamento las disposiciones de la ley aquí envuelta, como sostuvimos en *Rosario Mercado* v. *San Juan Racing*, 94 D.P.R. 634, 642 (1967) '... [J]amás [sic] debe entenderse modificado o suplantado el texto legal por el reglamentario'." *A.P.I.A.U., Inc.* v. *Srio. de Hacienda*, 100 D.P.R. 173, 177–179 (1971). Véase *Ex parte Irizarry*, 66 D.P.R. 672 (1946).

A tenor y en conformidad con la delegación legislativa expuesta en el citado artículo, en la Sec. 8.1 del Reglamento, pág. 11, la C.E.E. dispuso (sobre Decisiones y Ordenes de la Comisión) que:

> Además de las determinaciones descritas en la Sección 3.6 [del Reglamento] ... la Comisión podrá emitir cualquier decisión que estime necesaria para asegurar la efectividad de la Ley Electoral y de este Reglamento, y podrá ordenar cualquier medida que estime apropiada, según las circunstancias del caso.

En conformidad con lo anterior, entendemos que es legítimo que la C.E.E. prohíba al Departamento de Educación el uso de la estrella en todos sus anuncios, sin que para ello tenga que analizar independientemente cada uno de ellos. Esta consideración impide que los recurridos cuestionen la actuación del tribunal sentenciador aludiendo, además, que éste excedió al alcance de su encomienda dentro del proceso de revisión judicial al estructurar el remedio dispensado en el caso de autos.[12]

Finalmente, la interpretación adoptada por la Junta de Anuncios, por el tribunal de instancia y hoy acogida por este Tribunal, está sustentada por jurisprudencia anterior y es cónsona con la razón de la existencia del Art. 8.001, *supra*. Éste tiene su origen en el derogado Art. 3-014 del Código Electoral de Puerto Rico, Ley Núm. 1 de 13 de fe-

---

[12] Somos conscientes de que en determinadas circunstancias la estructuración del remedio puede ser parte consustancial del deber de la agencia de estructurar la política pública que le ha sido delegada. En particular, sería detrimental que el tribunal de ordinario y dentro del trámite de revisión judicial, concediese un remedio que no pudiese haber concedido la agencia por no habérsele delegado esa facultad en su ley habilitadora. Ello supondría que la única forma de conseguir el mismo remedio en un caso subsiguiente que lo ameritara requeriría recurrir a los tribunales mediante un recurso de revisión para que éste fuese dispensado. De esta forma, no sólo se vería debilitada la función agencial de pautar y delimitar la política pública que se le ha encomendado, sino que también el propósito de crear un cuerpo uniforme de normas dentro de un área en particular, una de las metas del derecho administrativo, sería imposible de alcanzar. En el caso de autos no existe la posibilidad de que la actuación del tribunal de instancia tenga ese efecto detrimental. Como hemos reseñado, salvado el escollo jurisdiccional, el remedio dispensado está dentro de la enumeración de las facultades concedidas a la agencia, por lo que la actuación del tribunal al diseñarlo no trasciende los linderos de una legítima revisión judicial.

brero de 1974 (16 L.P.R.A. ant. sec. 2094). Con pequeñas variaciones, esta disposición se ha incluido en todas las leyes electorales posteriores a 1974.

■ Desde sus comienzos, su propósito fue prohibir la utilización de fondos públicos para hacer campaña política. Este principio, a su vez, responde al postulado de igualdad inmerso en nuestra Constitución que persigue lograr una paridad económica entre los partidos políticos para la divulgación de ideas y mensajes en nuestro país. *P.N.P. v. Tribunal Electoral*, 104 D.P.R. 741 (1976); *Marrero v. Mun. de Morovis*, 115 D.P.R. 643 (1984). "El concepto de igualdad económica con relación a la distribución de fondos públicos en el proceso electoral impide que un partido que ostente el poder de gobernar al pueblo en un momento dado utilice fondos públicos, tomando ventaja indebida para promover su postura. El Art. 8.001 es precisamente una medida preventiva para que dicha práctica no ocurra." *P.P.D. v. Gobernador II,* 136 D.P.R. 916, 926 (1994).

Por consiguiente, ni el reglamento ni su interpretación pueden contravenir el citado Art. 8.001 y el propósito perseguido al promulgarlo. Válidamente y cónsono con lo anterior, era procedente interpretar con amplitud la expresión "medios de difusión". A esos efectos, toma vigencia la preocupación que, en opinión de conformidad, expresara el Juez Asociado Señor Negrón García:

> Las agencias de publicidad cuentan con expertos conocedores de la conducta humana. Ideas, imágenes, detalles visuales y gráficos aparentemente insignificantes pueden esconder solapadamente un mensaje político. Por lo tanto, no podemos abstraernos de los adelantos de la industria de las comunicaciones y del desarrollo de complejas técnicas para encubrir mensajes. Así podría sustituir la burda y repudiada práctica de la compra del voto por una refinada fórmula que penetra el inconsciente del elector. ... La Comisión Estatal de Elecciones y los tribunales tienen que estar vigilantes a lo que podrían ser novedosas formas de infringir la Ley Electoral de Puerto Rico. *C.E.E. v. Depto. de Estado*, 134 D.P.R. 927 (1993), citando a *P.N.P. v. Hernández, Srio. D.T.O.P.*, 122 D.P.R. 362, 388–389 (1988).

■ La publicidad es el "arte de dar a conocer las excelencias de un artículo, de un servicio o de una idea, *por todos los medios imaginables ... carteles, letreros luminosos ... y todo cuanto pueda llamar la atención del presunto cliente o adepto*". (Énfasis suplido.) G. Cabanellas, *Diccionario Enciclopédico de Derecho Usual*, 20ma ed., Buenos Aires, Ed. Heliasta, 1981, T. VI, págs. 509–510.

■ En específico, este Tribunal anteriormente ha incluido como "anuncios" a los fines del referido Art. 8.001 o de la Sec. 9 del Art. VI de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, que lo inspira: pegatinas (*bumper stickers*), rótulos, zafacones con emblemas y anuncios en los postes, en el centro de una cancha municipal, en los vehículos oficiales, en el timbre del papel oficial de un municipio y en camisetas. *P.P.D. v. Gobernador II*, supra.[13] Es decir, anteriormente hemos reconocido toda una gama de posibilidades que pueden crearse o adaptarse para llevar mensajes publicitarios de índole partidista.

Finalmente, no podemos ignorar el hecho de que las escuelas de referencia, donde están ubicados los rótulos impugnados, se convertirán en centros de votación el 5 de noviembre de 1996. No se nos ocurre una situación más manifiesta de violación a los claros preceptos del Art. VI de nuestra Constitución y al Art. 8.003 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3353, que dispone, en lo pertinente:

> Se prohíbe mantener abiertos al público, en un día de elección, locales de propaganda política dentro de un radio de cien (100) metros de cualquier edificio donde se hubiere instalado un colegio de votación, contándose esta distancia desde cualquier punto de la estructura del edificio donde se haya instalado tal local de propaganda.

---

[13] Incluimos aquí el análisis de *P.P.D. v. Gobernador II*, 136 D.P.R. 916 (1994), a los únicos fines de significar y resaltar la amplitud que le hemos reconocido al concepto anuncio en este contexto. Nada disponemos aquí sobre el alcance de la norma que expusimos en esa ocasión por no estar planteado.

A tenor de los fundamentos expresados anteriormente, procede que modifiquemos la sentencia dictada por el Tribunal de Circuito de Apelaciones en este caso, revoquemos aquella parte de ella que dejó sin efecto parcialmente el dictamen del Tribunal de Primera Instancia y reinstalemos este último en su totalidad.([14]) Esto es, se confirmará la parte de la sentencia del Tribunal de Primera Instancia que dispone:

> Se prohíbe el uso de la estrella en los anuncios del Departamento, y para los efectos de esa prohibición debe entenderse "anuncio" en su sentido más general y amplio, como que incluye no sólo los anuncios en la prensa, televisión, u otros medios tradicionales de difusión, sino también cosas tales como rótulos en frente de edificios.
> La prohibición incluye también la enorme estrella que actualmente se encuentra sobre el techo de las oficinas centrales del Departamento de Educación. (Escolio omitido.) Caso Núm. CC-96-356, Apéndice, pág. 87.([15])

El Juez Asociado Señor Negrón García emitió una opinión de conformidad, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton. El Juez Asociado Señor Corrada Del Río

---

([14]) Tomando en consideración la proximidad de los comicios electorales, se activa imperativamente la Regla 21(G)(1) del Reglamento que faculta a este Tribunal a limitar los términos para la tramitación y disposición más eficiente de los casos. Por consiguiente, cualquier moción de reconsideración deberá presentarse dentro del término improrrogable de tres (3) días, que habían de contarse desde la fecha del archivo en autos de una copia de la notificación.

([15]) Hemos analizado las fotos admitidas como evidencia por el Tribunal de Primera Instancia de los Anuncios del Departamento de Educación colocados en forma de rótulos frente a escuelas del país. *Exhibit* 5, 6 y 9 del P.I.P., parte recurrente. De éstas surge que estos anuncios contienen otros elementos, además de la estrella, que podrían contravenir la prohibición contenida en el Art. 8.001 de la Ley Electoral de Puerto Rico, *supra*. Nada disponemos al respecto, puesto que la legalidad de estos otros elementos no fue objeto de análisis por la C.E.E.

Por otro lado, en vista del poco tiempo que falta para la fecha en que han de celebrarse las elecciones generales, y a los fines de que el Departamento de Educación disponga de más tiempo para eliminar el referido logo y lema de los anuncios ubicados en las escuelas, se dispensará a dicho Departamento y a su Secretario de eliminar "la[s] enorme[s] estrella que actualmente se encuentra[n] sobre el techo de las oficinas centrales" de éste *antes* de dicho evento electoral, pero se condiciona esta dispensa a que tales estrellas *no podrán ser iluminadas* en forma alguna.

emitió una opinión disidente. El Juez Asociado Señor Rebollo López no intervino.

— O —

Opinión de conformidad del Juez Asociado Señor Negrón García, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton.

Varios principios inspiran nuestra conciencia judicial. *Primero*, "[l]o vital es que triunfe el pueblo entero de Puerto Rico; *que no se reduzca la calidad de su democracia ni se mancille la limpieza de sus procesos electorales; que se respeten escrupulosamente nuestra Constitución y nuestras leyes*". (Énfasis suplido.) *P.P.D. v. Barreto Pérez*, 110 D.P.R. 376, 387 (1980). *Segundo*, " '[n]o es función del gobierno, por sí, *lograr su reelección*'. Bajo el *postulado multidimensional de igualdad* inmerso en nuestra Constitución, en interacción con otros derechos fundamentales, principalmente ante el Art. VI, Sec. 9 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, *no es válido ni permisible el uso* de fondos públicos para anuncios y campañas publicitarias propagandistas de carácter político-partidista, sea clara, *indirecta, sutil*, disimulada, sofisticada o esté entremezclada con actividades *informativas legítimas*". (Escolios omitidos, énfasis en el original suprimido y énfasis suplido.) *P.P.D. v. Gobernador I*, 139 D.P.R. 643 (1995), opinión concurrente. *Tercero*, "[e]l uso de las facilidades y estructuras de las escuelas del país *tiene que tener un significado mayor. Las aulas educativas no deben limitarse a una mera necesidad circunstancial física. Más que simples estructuras de resguardo durante el día de las elecciones, tienen que representar el núcleo desde el cual la ciudadanía, los políticos y el Estado impartan y reciban lecciones democráticas*". (Énfasis suplido.) *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1, 284–285 (1989), opinión disidente.

Vindicar estos valores hace "imperativo que este Tribunal resuelva. El asunto es urgente y de claro interés público. Debemos ejercer total y vigorosamente *nuestra jurisdicción.* La adjudicación definitiva del caso no puede postergarse más. *Escalona Vicenty v. C.E.E.,* 115 D.P.R. 529, 530–531 (1984)". (Énfasis en el original suprimido y énfasis suplido.) *Granados v. Rodríguez Estrada I,* supra, pág. 266.([1])

## I

No se discute con seriedad que el dibujo del *logo* del Departamento de Educación —una *estrella,* acompañada de la frase "A cada niño un futuro, a cada niño su estrella"— en sus inicios respondió a una decisión legítima y

---

([1]) En su comparecencia, el Procurador General, a nombre del Departamento de Educación, dedica varias páginas a elaborar la tesis de que carecemos de jurisdicción para intervenir a base de la doctrina de jurisdicción primaria, pues la cuestión ante la Comisión Estatal de Elecciones se circunscribió al logo de cuatro (4) anuncios. Aduce que el uso de las estrellas sobre el edificio central del Departamento de Educación, y los rótulos en las escuelas, no fue planteado ni resuelto por la Comisión Estatal. Además, argumenta que el juicio *de novo* electoral es limitado.

*No tiene razón.* Desde el primer momento, la controversia en el seno de la Comisión Estatal de Elecciones trató sobre si el Departamento de Educación *podía seguir usando el logo.* Así lo entendió su respetable Presidente, Lcdo. Juan R. Melecio, al consignar en su resolución que el "efecto práctico de esta decisión [determinación de la Junta de Anuncios que ordenó que el logo sea eliminado] *es que se priva al Departamento de Educación de utilizar su logo,* dado el caso de que lo que se *elimina* del anuncio *es el logo de dicha Institución".* (Énfasis suplido.) Caso Núm. CC-96-354, Apéndice, pág. 6.

Más aún, en el juicio *de novo* ante el ilustrado Tribunal de Instancia (Hon. Ángel G. Hermida, Juez) se desfiló y estipuló prueba documental, demostrativa de la gran similitud de las estrellas colocadas sobre el edificio central de dicho departamento y los rótulos de las escuelas.

Según nuestra ley electoral, "juicio *de novo*" significa dilucidar de nuevo un asunto. Más que una simple revisión del expediente administrativo de un procedimiento anterior en la Comisión Estatal de Elecciones, *consiste de un enjuiciamiento amplio y completo de las controversias.* Puede, por ende, producirse *nueva* prueba documental y testifical. Implica que todos los extremos pertinentes y relativos a los planteamientos están abiertos a la consideración del tribunal revisor como si se plantearan por primera vez. Son anchas, pues, las puertas del recinto judicial para adjudicarlos. Véase *Granados v. Rodríguez Estrada I,* 124 D.P.R. 1, 138–141 (1989).

Circunscribir la prohibición a sólo cuatro (4) anuncios atenta contra la lógica que inspira el estatuto y el principio de fraccionamiento en la adjudicación de controversias.

neutral, cónsona con el tradicional uso de la estrella en las aulas como símbolo de excelencia en los estudios. Para esa época (1992) el Partido Popular Democrático ocupaba el poder gubernamental, y el logo escolar carecía de connotaciones políticas.

Sin embargo, a partir de 1993, ya en el poder gubernamental, el Partido Nuevo Progresista (en adelante P.N.P.) y sus candidatos comenzaron a utilizar, como símbolo político, una estrella. Desde entonces y hasta el presente, la utilizan junto a su símbolo *político oficial, la palma*; a veces sola y en ocasiones con mayor prominencia, incluyendo una palma dentro de la estrella.

También se acepta que las diferencias en diseño entre las estrellas son mínimas y bien sutiles, no perceptibles, salvo que se les examine y compare con cuidado. La del Departamento de Educación es dorada y la del P.N.P. blanca o azul, en los documentos impresos a color. Cuando los documentos impresos son en blanco y negro, ambas aparecen del mismo color.

Conforme surge del Apéndice A, que unimos a esta ponencia, la similitud se manifiesta con claridad en el contexto total del anuncio. A la estrella del Departamento de Educación le precede una estela de puntos dorados; a la del P.N.P., una estela de tres (3) franjas sólidas.

Ello explica por qué, con gran honestidad intelectual y profesional, el Procurador General admite que la estrella del logo del Departamento de Educación "es lo suficientemente *similar a la usada por el P.N.P. para tener el efecto incidental de favorecer a ese partido político en año de elecciones generales*". (Énfasis suplido.) Informe del Procurador General, pág. 19.

II

Aún aceptando esta realidad, el Departamento de Educación aduce, como defensa de derecho, que no le aplica la

veda del Art. 8.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3351, pues ni la estrella ni los rótulos colocados en las escuelas (que contienen el logo) constituyen "compra de tiempo y espacio en los medios de difusión pública". Además, nos dice que "es probable que por lo menos algunos de los rótulos y ciertamente las estrellas, hayan sido colocados *antes* del primero de enero del año en curso".

Ambos argumentos nos son ya familiares. En *P.P.D. v. Gobernador I*, supra, habíamos advertido que la prohibición estatutaria

> ... [n]o significa que nuestra Constitución queda eclipsada o entra en estado de hibernación; todo lo contrario, como veremos, a la luz de nuestro ordenamiento prevaleciente, *prohíbe siempre* el desembolso de fondos públicos para fines partidistas y, además, *impone limitaciones en el campo de la publicidad y los anuncios legítimos gubernamentales.*
>
> La existencia de una legislación y reglamentación electoral específica para gastos de difusión, no le resta virtualidad a la *prohibición general, subyacente en la Constitución, que prohíbe el empleo de fondos públicos y de propiedad gubernamental en campañas político-partidistas.* (Escolios omitidos, énfasis en el original suprimido y énfasis suplido.)

Mucho antes, en *P.N.P. v. Hernández, Srio. D.T.O.P.*, 122 D.P.R. 362, 382–383 (1988), opinión concurrente, habíamos rechazado igual argumento. Dijimos:

> De difícil juridicidad es ese razonamiento que, en esencia, anticipa y coincide con la opinión subsiguiente del Secretario de Justicia. El que una publicación se haya venido realizando *antes* del período de veda del Art. 8.001 de la Ley Electoral de Puerto Rico, *supra*, y esté sufragada regularmente, ¿desvirtúa su carácter de anuncio?; ¿pierde su calidad de gastos con fondos públicos que al Boletín de la Gobernación se le caracterice de "naturaleza oficial y continua"?; ¿establece, honestamente, alguna diferencia que lo prepare la propia Oficina de Comunicaciones y no una agencia de publicidad privada? En su origen, ¿de dónde provienen tales fondos? *Estas interrogantes quedan contestadas al confrontarnos con la innegable realidad de que es la sustancia y no la apariencia lo crucial y determinante; esto*

*es, que la fuente verdadera son los fondos provenientes del erario público.* (Énfasis suplido.)

Nos dice también el Procurador General que no hay prueba de que el Departamento de Educación haya utilizado el logo con fines proselitistas. Sabemos que en sus orígenes no fue así. No obstante, la evidencia abrumadoramente estableció que el P.N.P. comenzó a usar la estrella en su campaña partidista aun cuando su símbolo oficial era la palma, y conocía o debió conocer que la estrella era el logo del Departamento de Educación. *Al así hacerlo, el P.N.P. se apropió del logo de una agencia gubernamental e infringió la prohibición general contenida en el Art. 3.031 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3123.*([2])

El Departamento de Educación no hizo nada durante estos últimos cuatro (4) años para salvaguardar su logo de esa apropiación ilegal por el P.N.P. A ciencia y paciencia lo permitió su Secretario, Sr. Víctor Fajardo. Con conocimiento del "efecto incidental de favorecer a ese partido político en año de elecciones generales", ¿cómo puede ahora reclamar el Departamento de Educación que tiene derecho absoluto a usarlo? ¿Por qué no impidió que el P.N.P. lo usufructuara? ¿Vamos a ignorar la mutua relación de confianza e ideología política (por no decir afiliación) del Secretario, señor Fajardo, con el Gobernador, Hon. Pedro Rosselló González, Presidente y candidato a reelección por el P.N.P. en los comicios pautados?

Otra vez estamos frente a la nociva figura de la partidocracia "en que el epicentro gubernativo se entremezcla con el partido en el poder y su dialéctica interna ...". *P.P.D. v. Gobernador I,* supra, pág. 713, opinión concurrente.

---

([2]) Establece:

"*Ningún partido político* o candidato podrá:

"(2) usar la bandera o el escudo de armas del Gobierno de los Estados Unidos de América o del Estado Libre Asociado de Puerto Rico *o emblema, divisa o distintivo de cualquier agencia, departamento o instrumentalidad de éstos.*" (Énfasis suplido.) 16 L.P.R.A. sec. 3123.

La eliminación de la estrella del edificio central del Departamento de Educación y del logo y la frase en las escuelas públicas del país, que servirán de colegios de votación, es un remedio judicial impostergable para cumplir con el mandato de la Ley Electoral de Puerto Rico de que tales colegios tienen que estar libres de cualquier "propaganda política dentro de un radio de cien (100) metros". Art. 8.003 (16 L.P.R.A. sec. 3353). Sólo así la ciudadanía, los candidatos políticos y el Estado pueden impartir y recibir lecciones democráticas.

APPENDIX

— O —

Opinión disidente emitida por el Juez Asociado Señor Corrada Del Río.

> ... La estrella que habían visto en Oriente iba delante de ellos, hasta que se paró sobre el lugar en que estaba el niño. Mateo 2:9. *La Biblia Latinoamericana*, 13ra ed., Madrid, Ed. Verbo Divino, 1972, Nuevo Testamento, pág. 10.

Mediante los recursos presentados el 14 de octubre de 1996 por las partes peticionarias, nos solicitan que le prohibamos al Departamento de Educación de Puerto Rico (en adelante el Departamento) el uso de rótulos que contengan el símbolo de la "estrella", de manera que éstos no sean expuestos en el edificio principal del Departamento y en las escuelas públicas. Una evaluación cuidadosa y objetiva de las determinaciones de la Junta de Anuncios (en adelante Junta), de la Comisión Estatal de Elecciones (en adelante C.E.E.), del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones nos impide coincidir con el criterio de la mayoría, por entender que este Tribunal carece de jurisdicción para ordenar que se remuevan los rótulos en cuestión.

I

Desde 1991, el lema "A cada niño un futuro, a cada niño su estrella" y el icono de la estrella dorada componen el logo oficial del Departamento. Este lema y el logo correspondiente fueron establecidos cuando la Hon. Celeste Benítez se desempeñaba como Secretaria de Educación, bajo la administración del entonces Gobernador de Puerto Rico, Hon. Rafael Hernández Colón. En de enero de 1996, el Departamento le sometió a la Junta cuatro (4) anuncios para su aprobación. Estos anuncios iban a ser divulgados por los medios de comunicación masiva y contenían el lema y el logo del Departamento. Durante ese mismo mes, la Junta

autorizó el uso de los anuncios, pero le ordenó al Departamento que eliminara de éstos el lema y la estrella, ya que a su entender el Partido Nuevo Progresista (en adelante el P.N.P.), partido político cuyo candidato a Gobernador, Hon. Pedro Rosselló, fue electo para administrar el Gobierno en las elecciones generales de 1992, esconde en la estrella un mensaje político.

El Comisionado Electoral del P.N.P. impugnó el dictamen de la Junta. La orden prohibitoria de ésta llegó ante el Presidente de la C.E.E., el Hon. Juan M. Melecio, quien dejó sin efecto la determinación de la Junta. El Presidente de la C.E.E. expuso que el uso de la estrella como un logo del Departamento antecede a la administración del P.N.P.; que los fundamentos para seleccionar ese logo no tienen relación con el mensaje político que éste alegadamente preconiza, y que la controversia sobre la naturaleza político-partidista de la estrella constituye cosa juzgada, ya que el Tribunal de Primera Instancia había emitido una sentencia en 1992, en la cual sostuvo que por ser la estrella un símbolo genérico en nuestra sociedad, no se le puede atribuir a ésta una connotación política.

Para resolver el caso ante nuestra consideración, debe quedar claro que se desprende de la prohibición de la Junta y de la posterior determinación revocatoria del Presidente de la C.E.E. que en ningún momento se planteó ante esos organismos administrativos la legalidad o ilegalidad de los rótulos u ornamentos decorativos colocados en los predios y las facilidades pertenecientes al Departamento. Tampoco en ninguna de las dos (2) determinaciones administrativas se hizo referencia a estas formas de expresar el logo. Por el contrario, la Junta y el Presidente de la C.E.E. se limitaron a considerar la legalidad de los anuncios que habrían de ser difundidos por los medios de comunicación cuya autorización pidió el Departamento. Los partidos políticos representados en la C.E.E. no presentaron una querella contra los rótulos de la

estrella en las facilidades del Departamento como parte de estos procedimientos administrativos. Tales estaban las cosas cuando el Tribunal de Primera Instancia, Sala Superior de San Juan, revisó la adjudicación administrativa.

## II

Los peticionarios nos solicitan que le ordenemos al Departamento que no utilice el símbolo de la estrella en rótulos en sus facilidades, por éste violar el Art. 8.001 de la Ley Núm. 4 de 20 de diciembre de 1977, conocida como la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3351. En su Sentencia de 26 de agosto de 1996, el tribunal de instancia, al fundamentar su orden de que se desmantelen los rótulos de la estrella, interpretó que el citado artículo de la Ley Electoral de Puerto Rico

> ... prohíbe el uso de la estrella en los anuncios del Departamento, y para los efectos de esa prohibición debe entenderse "anuncio" en su sentido más amplio, como que incluye no sólo los anuncios en la prensa, televisión u otros medios tradicionales de difusión, sino también cosas tales como rótulos en frente de edificios. Sentencia de 26 de agosto de 1996, pág. 20.

Esa interpretación del término *anuncio* carece de razón y violenta, por fíat judicial, el texto claro de lo ordenado por la Legislatura de Puerto Rico, constituyendo una interferencia indebida de la Rama Judicial con los poderes de la Rama Legislativa.

La redacción de la ley es la mejor exposición de la intención legislativa, y la Ley Electoral de Puerto Rico es particularmente específica en su interés de definir la aplicación del término *anuncio*. Examinemos el artículo aludido.

La Ley Electoral de Puerto Rico, en su Art. 8.001, *supra*, denominado *Gastos de Difusión Pública del Gobierno*, dispone que:

> Se prohíbe a las agencias del Gobierno de Puerto Rico, la Asamblea Legislativa de Puerto Rico y a la Rama Judicial, que

a partir del 1ro de enero del año en que se deba celebrarse una elección general y hasta el día siguiente a la fecha de celebración de la misma, incurran en gastos *para la compra de tiempo y espacio en los medios de difusión pública* con el propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes. Se exceptúan de esta disposición aquellos avisos y anuncios de prensa expresamente requeridos por ley.

Asimismo, se exceptúan de la anterior disposición aquellos anuncios que sean utilizados para difundir información de interés publico, urgencia o emergencia, los cuales sólo serán permitidos previa autorización al efecto de la Comisión Estatal de Elecciones. (Énfasis suplido.)

El citado Art. 8.001 es una medida preventiva para salvaguardar el concepto *igualdad económica* con relación a la distribución de fondos públicos en el proceso electoral, y evitar de esta manera que el partido que se encuentre en el poder utilice, durante el año eleccionario, fondos públicos para promover su plataforma política, adquiriendo de esta forma una desventaja indebida sobre los partidos de minoría durante años eleccionarios. *P.P.D. v. Gobernador II*, 136 D.P.R. 916 (1994).

El diseño legislativo de este artículo es claro al señalar que son los anuncios, que han de ser comunicados *por los medios de difusión pública*, los que están sujetos a la autorización de la C.E.E. La ley no hace referencia alguna al uso de rótulos u ornamentos en estructuras físicas.

Acatando ese artículo de la Ley Electoral de Puerto Rico, el Reglamento para el Control de Gastos de Difusión Pública del Gobierno de 15 de noviembre de 1995 (en adelante el Reglamento) señala lo siguiente en su Sec. 1.2 (Declaración de Propósitos):

Este Reglamento tiene como propósito el reglamentar la prohibición sobre los gastos para *la compra de tiempo y espacio en los medios de difusión pública, así como de otros medios de difusión* de las Agencias del Gobierno de Puerto Rico, la Asamblea Legislativa y la Rama Judicial a partir del 1ro de enero del año en que se celebren las elecciones generales y hasta el día siguiente a la fecha de celebración de la misma, a los fines de evitar la divulgación publicitaria indiscriminada que tenga el

propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes que en alguna forma coaccionen o afecten la voluntad de los electores. (Énfasis suplido.) Reglamento, pág. 1.

En la Sec. 1.4 del Reglamento, pág. 2, se definen los términos *exponer* y *gastos*. El término *exponer* se define de la forma siguiente: "Darle publicidad, poner de manifiesto o divulgar al conocimiento público cualquier información *mediante el uso de los medios de difusión.*" (Énfasis suplido.) El término *gastos* se define como "[t]odo desembolso o compromiso de desembolso efectuado por una agencia para la compra de tiempo o espacio en cualquier medio de difusión". Íd. Es la propia Ley Electoral de Puerto Rico, en su Art. 1.003(24), la que determina cuáles medios de comunicación constituyen *medios de difusión* para los efectos de la ley. Se dispone que los *medios de difusión* son: "[l]a radio, cine, televisión, periódicos, revistas, publicaciones, periódicos y hojas sueltas." 16 L.P.R.A. sec. 3003(24).

Nótese que la Ley Electoral de Puerto Rico no incluye el uso de rótulos u otros ornamentos decorativos bajo el término *medios de difusión* y que la ley y el Reglamento que la interpreta para implantarla se dirigen sólo a los anuncios que serían publicados en dichos medios. Por otra parte, el Reglamento es claro en que se deben someter a la C.E.E. sólo aquellos anuncios por los cuales el Gobierno incurrirá *en gastos para comprar tiempo o espacio en un medio de difusión,* como lo define el Reglamento. La colocación de rótulos y ornamentos decorativos en los predios del Departamento no requiere gastos de esta índole. Los predios le pertenecen al Departamento y estos rótulos ocupan un tiempo y espacio públicos por el cual el Departamento no tiene que pagar a los medios de difusión. Parece obvio que el Reglamento de la agencia interpreta correctamente que los anuncios no diseminados por los medios de comunicación masiva no están sujetos a la aprobación de la C.E.E., ello porque la Ley Electoral de Puerto Rico es clara al respecto. Por lo tanto, esta ley sólo le concede a la C.E.E.

la autoridad para entender sobre anuncios que serán transmitidos por televisión, radio, prensa y demás medios de comunicación masiva. Un rótulo que coloque una agencia gubernamental en sus oficinas o un símbolo que ésta utilice en sus documentos, no constituye un anuncio según la Ley Electoral de Puerto Rico. La C.E.E. no tiene jurisdicción ni facultad para entender sobre la colocación de rótulos o símbolos por parte del Gobierno, si éstos no han de ser expuestos al público mediante la difusión por los medios de comunicación masiva.

Para interpretar correctamente el alcance de este estatuto, basta con entender que los adelantos tecnológicos en el campo de las comunicaciones han revolucionado en las últimas décadas la difusión de información en nuestra sociedad. Es la difusión en los medios de comunicación masiva, desde la prensa hasta el *Internet*, por los cuales el Gobierno tendría que pagar para la compra de tiempo y espacios en éstos, a lo que claramente se refiere el Art. 8.001 de la Ley Electoral de Puerto Rico, *supra*. Ciertamente, el símbolo de la estrella que está en controversia ante nos, la cual se encuentra empotrada en forma de rótulo, no se está exponiendo al público de la misma forma que los medios de comunicación masiva atienen su exposición.

La norma doctrinal en el ámbito del derecho administrativo es que la jurisdicción de una agencia se circunscribe a la delegación legislativa formativa. Esto es, la concesión legislativa de jurisdicción a una agencia administrativa es de limitada interpretación. Para los efectos del derecho administrativo, "[l]a semántica a un lado, la ley es la expresión de un propósito o fin deseado y querido". *Rodríguez Rodríguez v. Gobernador*, 91 D.P.R. 101, 107 (1964). Ese propósito o fin deseado está claramente contenido en los Arts. 8.001 y 1.003 de la Ley Electoral de Puerto Rico, *supra*, según hemos visto.

Si seguimos el criterio de la mayoría de este Tribunal al definir estos rótulos como *anuncios*, encontramos que sería muy difícil determinar exactamente qué comprende el ahora inventado y expandido término *anuncio* para efectos de la Ley Electoral de Puerto Rico. Tanto la decoración de las oficinas de la agencia, como el diseño arquitectónico o fachada de sus edificios y el boceto que habrá de ser impreso en los papeles timbrados de la agencia, tendrían que someterse ante la C.E.E., o tal vez a los tribunales, para su aprobación. Ciertamente, esta interpretación violenta no sólo los principios más elementales de la autorrestricción judicial, sino también los del derecho administrativo al dictaminar en un procedimiento de revisión judicial de una determinación de un organismo administrativo, como son la Junta y la C.E.E., un remedio que no puede ser concedido por dichos organismos y, por ende, fuera de nuestra jurisdicción.

La referencia en la opinión de la mayoría a ciertos precedentes para tratar de justificar la definición expandida del término *anuncio* según el Art. 8.001 de la Ley Electoral de Puerto Rico, *supra*, para incluir los rótulos en el caso de autos, requiere nuestro examen.

Es totalmente errónea la conclusión de la opinión mayoritaria de que en *P.P.D. v. Gobernador I*, 139 D.P.R. 643 (1995), incluimos como anuncios, a los fines del citado Art. 8.001, cosas tales como pegatinas (*bumper stickers*), rótulos, zafacones con emblemas, anuncios en los postes, en el centro de una cancha municipal, en los vehículos oficiales, en camisetas y otros. En relación con este tipo de propaganda utilizada por el Alcalde de Carolina, Hon. José Aponte, en dicho caso no se estaba interpretando la definición del término *anuncio* según el referido Art. 8.001, ya que la propaganda se efectuó en el 1995, por lo que no entraba en juego el citado artículo, cuya vigencia comienza el 1ro de enero del año electoral. El citado caso no se ori-

ginó en la Junta o en la C.E.E. ni se trataba de una revisión judicial de una determinación administrativa. Por el contrario, el caso *P.P.D. v. Gobernador I*, supra, trata sobre dos (2) pleitos independientes de *injunction* presentados directamente en los Tribunales de Primera Instancia, Salas Superiores de Carolina y de San Juan, respectivamente. Las partes siguieron el procedimiento de un pleito independiente en el cual el tribunal de instancia ejerció su jurisdicción original y este Tribunal su jurisdicción apelativa. Ese debió ser el procedimiento seguido en el caso de autos, con todas las garantías del debido procedimiento que ello entraña, y no la concesión de un remedio que en efecto equivale a un *injunction* dentro de una revisión judicial de un procedimiento administrativo en que se carecía absolutamente de jurisdicción para conceder un remedio que el organismo administrativo no podía conceder.

También es menester señalar que en *P.P.D. v. Gobernador I*, supra, se procedió a base de la Sec. 9 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 369, la cual dispone:

> Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley.

Aunque la decisión hace referencia comparativa al Art. 8.001 de la Ley Electoral de Puerto Rico, *supra*, la determinación sobre el alcance del término *anuncio* no se hace en referencia con la Ley Electoral de Puerto Rico, sino a esa directriz de la Constitución. El Juez Asociado Señor Hernández Denton, en su opinión de conformidad en *P.P.D. v. Gobernador I*, supra, distinguió la aludida sección de la Constitución de este artículo de la Ley Electoral de Puerto Rico, aunque éstos tengan propósitos complementarios. Este Tribunal, como máximo intérprete de nuestra Constitución, puede dictar el alcance de un término en relación con ésta. Sin embargo, la Ley Electoral de Puerto Rico contiene su propia designación de lo que significa el término

*anuncios* para los efectos de esa ley. Expandir esa defini-ción por fíat judicial en un caso de índole administrativo es antijurídico.

## III

El Art. 8.029 de la Ley Electoral de Puerto Rico dispone que "los organismos e instituciones creados mediante [esta ley], *tendrán jurisdicción exclusiva* en todo lo relativo a las facultades, obligaciones y deberes que le son impuestos en [esta ley] y sus reglamentos". (Énfasis suplido.) 16 L.P.R.A. sec. 3383. El Art. 1.016 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3016a, dispone que, ante una determina-ción desfavorable de la C.E.E., la parte afectada puede acu-dir a un Tribunal Superior "mediante la radicación de un escrito de revisión", para que éste atienda la resolución, determinación y orden de la C.E.E. Es mediante esa con-cesión de revisión judicial que las partes recurrentes ante nos acudieron al tribunal de instancia. Examinemos los límites jurisdiccionales de esa revisión.

La norma revisora en el campo del derecho administra-tivo es que lo planteado ante una agencia administrativa para su adjudicación determina la capacidad jurisdiccional de un tribunal para revisarla. D. Fernández Quiñones, *De-recho Administrativo y Ley de Procedimiento Administra-tivo Uniforme*, 1ra ed., Bogotá, Ed. Forum, 1993, Sec. 9.4(A), pág. 525; *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985); *Rybachek v. U.S. E.P.A.*, 904 F.2d 1276, 1296 (9no Cir. 1990); *Batch v. Town of Chapell Hill*, 387 S.E.2d 655 (1990); *Wadman v. City of Omaha*, 438 N.W.2d 749 (1989); *Love v. Thomas*, 858 F.2d 1347, 1356 (9no Cir. 1988); *Franklin County Sheriff's Office v. Sellers*, 646 P.2d 113 (Wash. 1982); *Methuen Retirement v. Contributory Re-tirement*, 424 N.E.2d 242 (1981); *Howell v. Harden*, 203 S.E.2d 206, 207 (1974). "[T]he reviewing function is one ordinarily limitied to consideration of the decision of the

agency ... and of the evidence on which it was based." *United States v. Bianchi & Co.*, 373 U.S. 709, 714–715 (1963); *Twiggs v. U.S. Small Business Administration*, 541 F.2d 150 (3er Cir. 1976); *Ross v. Governors of Knights of AK-Sar-Ben*, 299 N.W.2d 145, 146 (1980).

La Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. secs. 2101–2201), dispone los límites jurisdiccionales que un tribunal usualmente debe acatar para revisar con deferencia la adjudicación de una agencia administrativa.([1]) En su sección pertinente, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico especifica que la agencia compilará un expediente oficial que contenga lo acontecido en cada procedimiento de adjudicación. La ley ordena, en palabras no abiertas a la interpretación, que *"[e]l expediente de la agencia constituirá la base exclusiva* para la acción de la agencia en un procedimiento adjudicativo bajo este Capítulo y *para la revisión judicial ulterior"*. (Énfasis suplido.) 3 L.P.R.A. sec. 2168. Además, en *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194 (1987), este Tribunal dispuso que nuestra revisión de determinaciones administrativas está enmarcada dentro de lo presentado ante, y considerado por, el ente administrativo. "En otras palabras, nuestra intervención debe estar limitada a evitar actuaciones arbitrarias o caprichosas o en violación a los reglamentos de la entidad, o para garantizar la protección y el respeto de los derechos consagrados en las Constitu-

---

([1]) La Comisión Estatal de Elecciones (en adelante la C.E.E.), aunque expresamente fue excluida del alcance de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, ha de regirse por unos principios generales de Derecho Administrativo que enmarquen su función adjudicativa y dirijan cualquier revisión judicial posterior. De esta forma, la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico recoge principios fundamentales del derecho administrativo, que son aplicados a asuntos como los que están ante nuestra consideración por los tribunales y que son de general conocimiento y aceptación.

ciones del Estado Libre Asociado y de Estados Unidos." Íd., pág. 212.

Sin embargo, la revisión dispuesta en la Ley Electoral de Puerto Rico no es de naturaleza ordinaria. El Art. 1.016 de la Ley Electoral de Puerto Rico, *supra*, le brinda a las partes un juicio *de novo* en revisión de la determinación de la C.E.E. Es imprescindible ser claro sobre el alcance jurisdiccional de este juicio *de novo*.

En *P.N.P. y P.I.P. v. Rodríguez Estrada*, 122 D.P.R. 490 (1988), este Tribunal interpretó que ese artículo de la Ley Electoral de Puerto Rico le impone al tribunal revisor el deber de recibir evidencia y hacer sus propias determinaciones de hechos y conclusiones de derecho. Hasta el presente, este Tribunal no ha determinado la extensión jurisdiccional de un juicio *de novo*. Fernández Quiñones, *op. cit.*, págs. 561–562. En *Granados v. Rodríguez Estrada I*, 124 D.P.R. 1 (1989), este Tribunal se expresó sobre el uso de un procedimiento *de novo* para revisar las determinaciones de la C.E.E. y clasificó dicho procedimiento como provisto de "un criterio de revisión judicial más riguroso". Se ha dispuesto que el tribunal al actuar *de novo* no le debe deferencia a la entidad administrativa y, por lo tanto, el tribunal no debe limitarse a la prueba que se presentó ante ese foro para su determinación. No obstante, es importante enfatizar que el hecho de que el juicio sea *de novo* no le aleja de su función de revisar una directriz administrativa. El juicio *de novo* participa de la naturaleza de un procedimiento de revisión y de un pleito en jurisdicción original, pero ciertamente el tribunal revisor debe pronunciarse sobre el mismo asunto presentado ante la agencia, no sobre otra controversia no sometida ante ésta.

La norma de derecho administrativo es que la revisión judicial de una adjudicación administrativa debe atenerse sólo a las controversias planteadas ante el foro administrativo. En estos casos, el tribunal no puede conceder, por vía de revisión judicial en un juicio *de novo*, un remedio

que el foro administrativo no tenga la facultad en ley para conceder. De así hacerlo, no se trataría de un juicio *de novo* en caso de revisión judicial, sino de un pleito independiente sobre una causa de acción de distinta naturaleza. Este es precisamente el grave error del tribunal de instancia que convirtió este caso de revisión judicial en uno de *injunction* o de *mandamus*, sin cumplirse los trámites procesales y sustantivos de un pleito independiente. De igual forma, los tribunales de justicia sólo entienden sobre casos y controversias planteadas. No estiran su jurisdicción para considerar controversias que no se hayan traído para su pronunciamiento. *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958). El procedimiento *de novo* no le da rienda suelta al tribunal revisor para expresarse sobre controversias no planteadas ante el foro de adjudicación administrativa.

En su informe de 18 de enero de 1996, la Junta autorizó el uso de los anuncios sometidos por el Departamento, con la única restricción de que se eliminara de ellos la estrella y la frase: "A cada niño un futuro, a cada niño su estrella." Es esencial recordar que ese dictamen no contiene referencia alguna a los rótulos de la estrella o al uso de ésta en los predios del Departamento como emblema de éste. Tampoco se solicitó la remoción de este rótulo ante la C.E.E., ni su Presidente se pronunció sobre ese uso particular del símbolo de la estrella. Por lo tanto, nos encontramos ante una situación en que un tribunal revisor consideró prueba o argumentos no presentados ante el foro administrativo. La legalidad de los rótulos de la estrella en las facilidades del Departamento constituye una *controversia diferente*, no planteada ante la Junta ni ante la C.E.E. para su determinación.([2])

---

([2]) La C.E.E. en su comparecencia de 21 de octubre de 1996, explica que aún no ha emitido una decisión final sobre el asunto de "las estrellas ubicadas sobre el techo de [las] oficinas principales [del Departamento de Educación], así como los rótulos

En efecto, es el Tribunal a quo el que en primera ocasión discute el asunto de los rótulos de la estrella. Es de importancia subrayar que se acudió al tribunal de instancia para suplicar una revisión judicial de la determinación administrativa emitida sobre la controversia planteada ante ésta; es decir, el de los anuncios que el Departamento intentaba publicar en los medios de difusión. Por lo tanto, le competía a dicho tribunal revisar la determinación del Presidente de la C.E.E., la cual a su vez se limitó a revisar lo determinado por la Junta. Su función revisora le impedía al tribunal de instancia atender las polémicas no presentadas ante el foro administrativo que emitió la decisión que habría de ser revisada. El tribunal de instancia erró, excediéndose de su jurisdicción al dictaminar sobre la legalidad de los rótulos de la estrella.

La decisión de la mayoría de este Tribunal hoy revive el error cometido por el tribunal de instancia; error que ya había sido corregido por el Tribunal de Circuito de Apelaciones. Este Tribunal pretende emitir una sentencia sobre algo que nunca fue tratado ante el foro administrativo para su adjudicación. Esa determinación yace fuera de nuestra jurisdicción, y sostenemos que tal falta de potestad nos impide pronunciarnos al respecto. De acuerdo con la función revisora de este Tribunal, nuestra jurisdicción nos restringe a revisar la legalidad de lo planteado ante, y deliberado por, la Junta y la C.E.E.

En *Escalona Vicenty v. C.E.E.*, 115 D.P.R. 529 (1984), este Tribunal adjudicó los méritos de una acción contra la C.E.E., prefiriendo no requerirle al peticionario que agotara los recursos administrativos. Es evidente que los recursos ante nos son distinguibles de la decisión del caso antes citado. En primer lugar, el caso *Escalona Vicenty v.*

---

frente al Departamento y en las escuelas del país". Por su parte, la comparecencia del Departamento de Educación, con la misma fecha, nos señala que el 16 de octubre de 1996 la Comisionada del Partido Independentista Puertorriqueño recurrió ante la C.E.E. para que ésta entendiera sobre la legalidad de estos rótulos. Casos Núms. CEE-PV-225 y 226. Ante estos acontecimientos, el Tribunal no debió expedir los recursos solicitados.

*C.E.E.*, supra, y los recursos presentados ante nos no comparten una trayectoria procesal similar. En *Escalona Vicenty v. C.E.E.*, supra, se solicitaba que expidiésemos un *mandamus*, no que revisáramos una determinación administrativa. En ese caso se nos solicitó que le ordenásemos a la C.E.E. acelerar sus procedimientos administrativos en vista de que se aproximaba la fecha de las primarias pertinentes. Los peticionarios hoy ante nos solicitan la revisión de una adjudicación administrativa ya emitida por la C.E.E. El recurso de *Escalona Vicenty v. C.E.E.*, supra, llegó ante este Tribunal en jurisdicción original, por lo que no se requería agotar los procedimientos administrativos. En segundo lugar, el recurso que se solicitaba en ese caso, nos fue solicitado en una fecha próxima a la celebración de las primarias a las que se refería el recurso y trataba de si se certificaba o no a un candidato para participar en ellas. El caso ante nos no plantea una controversia de similar urgencia.

## IV

Veamos la cuestión del uso de la estrella como rótulo. La estrella conlleva innumerables mensajes; es por uno de éstos que fue seleccionada por el Departamento como su logo en 1991. La estrella es un logo que identifica al Departamento y su rol en la nueva dirección de política pública que dispuso la Legislatura en su Ley Orgánica del Departamento de Educación del Estado Libre Asociado de Puerto Rico, Ley Núm. 68 de 28 de agosto de 1990 (3 L.P.R.A. sec. 391 *et seq.*).

En *P.P.D. v. Gobernador I*, supra, pág. 701, la mayoría de este Tribunal expresó en un *dictum* lo siguiente:

La utilización de símbolos o insignias de naturaleza político-partidistas, tales como la palma y la *estrella*, ciertamente identificables con el P.N.P., es contraria al fin público que exige nuestro ordenamiento constitucional en la administración del

erario y al axioma de paridad económica entre las fuerzas electorales que le sirve de norte. (Énfasis en el original suprimido y énfasis suplido.)

En esa decisión, como en la certificada hoy, la mayoría expone la tesis absurda y miope, como un gran censor, de que la estrella es un símbolo político-partidista en nuestra sociedad. La estrella es un símbolo genérico que se utiliza para connotar un sinnúmero de simbolismos en diversas acepciones. Por eso, aunque dudamos de que la mayoría tenga éxito en su iniciativa de pretender dictar el significado de este símbolo, lamentamos la trivialización de la estrella al asociarlo el Tribunal con un sólo partido político, cuando la estrella es usada en alguna forma por todos los partidos políticos, organizaciones cívicas y sociales, grupos religiosos y ciudadanos en particular. La estrella es un símbolo que claramente se resiste a que la mayoría lo enmarque en la clasificación de símbolo político-partidista. Los símbolos sociales gozan de diferentes connotaciones, las cuales dependen, y eventualmente se desprenden, del contexto en el que se utilicen. La naturaleza del símbolo social es mutar constantemente de definición, a la vez que distintos grupos lo utilizan de diversas formas, empleándolo para sus fines y propósitos. De restringirse la expresión social con definiciones normativas, los símbolos yacerían inertes, sin poder sostener ni llevar nuevas expresiones. Ese es el riesgo que corre la mayoría hoy, en violación a los fundamentos de la Primera Enmienda de la Constitución de Estados Unidos y del Art. II, Sec. 4 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, restringiendo el derecho a la libre expresión por medio de símbolos.

No obstante, la mayoría insiste en entender que puede definir un símbolo específico: la estrella que en 1991 el Departamento escogió para que le simbolizara. La mayoría califica el rótulo de esa estrella como un medio de publicidad política. Esa percepción es también equivocada. Para

entender el propuesto significado simbólico de la estrella rotulada en el Departamento es necesario entender primero el origen de este icono. Examinémoslo.

El Departamento, en un memorando de 13 de marzo de 1992, explicó el origen de la estrella como su logo. En ese memorando expresó lo siguiente:

"Desde que la Secretaria de Educación [Hon. Celeste Benítez] asumió el cargo el 1ro de febrero de 1991, se dio a la tarea de cambiar el logo de la Agencia para que el mismo fuese uno más ágil y moderno, a la luz de la aprobación de la Ley de Reforma. El logo del Departamento no se había cambiado desde la década de los cincuenta.

... Es así como surge el nuevo logo del Departamento que va acompañado del lema "A cada niño un futuro, a cada niño su estrella", que recoge el espíritu de la Ley de Reforma Educativa de forma más sencilla.

Se escogió el icono de la estrella dorada porque su virtud es la sencillez y es símbolo de máxima superación con el cual estamos todos familiarizados. Se partió del racional que 'estrellas eran las que nos ponía la maestra en el cuaderno por un trabajo bien hecho. Para todo el que ha sido niño, significa excelencia. Pero la estrella es también símbolo de aspiraciones, metas, sueños, lo que queremos alcanzar'. No hubo otra consideración en la selección del icono.

El lema recoge y resume la aspiración del Departamento de Educación formulada en la nueva Ley Orgánica de la Agencia en el Artículo 1.02, que lee 'Nuestra aspiración es alcanzar el mayor grado posible de calidad en la educación pública en todos los niveles del Sistema. Cada alumno debe recibir una educación que propenda al pleno desarrollo de su personalidad, de sus capacidades intelectuales y al fortalecimiento de los derechos del ser humano y de sus libertades fundamentales. Un egresado del Sistema de Educación Pública deberá poseer entre sus metas la excelencia en todos los aspectos de su vida'." Caso Núm. CC-96-356, Apéndice, pág. 7.

Vemos entonces el propósito por el cual el Departamento, durante la administración de la entonces Secretaria Hon. Celeste Benítez, nombrada por el Gobernador de Puerto Rico, Hon. Rafael Hernández Colón, escogió la estrella como su símbolo. La estrella del Departamento no es un símbolo político-partidista, sino una representación de

un reconocimiento que los maestros le conceden a sus estudiantes por su esfuerzo. Es en este contexto que la estrella en cuestión fue seleccionada como el logo del Departamento durante la administración pasada del Partido Popular Democrático (en adelante P.P.D.), cuyo Comisionado Electoral se presenta ante nos como recurrente, sólo cinco (5) años más tarde.

Recordemos que el uso de la estrella como logo del Departamento fue fuente de controversia durante el año eleccionario de 1992, cuando el Departamento y la C.E.E. acudieron al Tribunal de Primera Instancia como partes adversas. En el caso *Departamento de Educación v. Comisión Estatal de Elecciones*, Caso Civil Núm. KPE92-0325 (906), la controversia ante el tribunal era si se justificaba prohibir la difusión del logo particular del Departamento, consistente en una estrella y el lema "A cada niño un futuro, a cada niño una estrella". Revisando la determinación de la C.E.E. sobre el uso de una estrella en ese contexto, el tribunal fundamentó su sentencia de la manera siguiente:

> No podemos concurrir con la CEE de que el uso de la estrella pueda "malinterpretarse" como campaña política del partido en el poder. Si seguimos el razonamiento de la CEE, entonces habría que proscribir el despliegue de la bandera de Puerto Rico durante el período eleccionario, pues ésta evidentemente es monoestrellada. Caso Núm. CC-96-356, Apéndice, pág. 7.

Es menester notar que, en cuanto a si la estrella debe ser limitada en su uso por ésta poder expresar un significado político-partidista, ambas decisiones contienen hechos similares, con la excepción de que la administración en poder del Gobierno a la cual se le permitió exhibir la misma estrella era de un partido político diferente al que en el presente administra nuestro Gobierno.

La Ley Electoral de Puerto Rico es clara en que cada partido político tendrá un emblema.

El nombre y emblema que, como distintivo, usará en la pape-

leta electoral todo partido político principal será aquél utilizado por éste en las elecciones generales precedentes, a menos que se notifique a la Comisión, mediante certificación de su organismo directivo central, un cambio en el nombre o emblema no más tarde de los sesenta (60) días previos al día de la elección.

También, antes de esta fecha, todo candidato a Gobernador, Comisionado Residente y Legislador podrá presentar a la Comisión una divisa sencilla y distinguible para que se coloque al lado de su nombre en la papeleta electoral. 16 L.P.R.A. sec. 3209.

De esta forma, la Ley Electoral de Puerto Rico especifica el procedimiento que se ha de seguir para que un símbolo se certifique como representativo de un partido político. Nos parece claro que la aludida estrella no es un emblema del P.N.P. ni de ningún otro partido. La Rama Legislativa dispuso cómo se determinarán los símbolos partidistas. Es, por lo tanto, una intromisión indebida de este Tribunal dictaminar que la estrella es un símbolo representativo del P.N.P. Independientemente de la decisión que hoy emite la mayoría, el símbolo del P.N.P. es la palma de cocos, no la estrella. La estrella sigue siendo del P.N.P., del P.P.D., del Partido Independentista Puertorriqueño y de muchos otros grupos y personas. Cada uno seguirá su propia estrella.

Por estas razones, concluimos que el Tribunal, al dictar que se le reconozca una dimensión política-partidista a esta estrella, comete una intervención judicial innecesaria que consigue sólo que se le atribuya un significado totalmente diferente al que se le asignó cuando fue seleccionada en 1991. Lo que la mayoría del Tribunal resuelve es que, en efecto, cuando el P.P.D. estaba en el poder, podía utilizar la estrella como parte de sus gestiones de gobierno en el Departamento, pero el P.N.P. no la puede utilizar para esas mismas gestiones. La justicia debe medir a todos con la misma vara.

## V

En *P.I.P. v. C.E.E.*, 120 D.P.R. 580, 611 (1988), determinamos que

> ... los tribunales debemos actuar con prudencia y deferencia a la voluntad legislativa, siempre que la misma esté enmarcada dentro del sistema constitucional y aunque como magistrados discrepemos personalmente de la bondad de los actos legislativos. (Citas omitidas.)

Con su decisión, la mayoría de este Tribunal ordena que el Departamento abandone el uso de su símbolo; esto es un intento de vendar los ojos de la ciudadanía para que no se vea ninguna estrella en las facilidades del Departamento. Comete un grave error nuestro Tribunal al interponer su voluntad sobre la intención legislativa de cómo se debe llevar a cabo la educación pública. El diseño de la Legislatura tiene como meta que la educación de nuestra juventud no se limite al aprendizaje miópico de asignaturas sin contexto, sino que también se le brinde al estudiante un trasfondo que le servirá para expandir los horizontes de su condición y así entender y aprovechar mejor lo aprendido. Como lo indica el nuevo nombre del Departamento, su énfasis cambió del sólo propósito de instruir, a también educar, a expandir la personalidad. La estrella del Departamento fue seleccionada para simbolizar esta nueva perspectiva educativa, evocando la imagen de la codiciada estrellita que la maestra le concede al niño estudiante como premio por su esfuerzo. Esa estrella en el Departamento es para todos los puertorriqueños sin importar el partido político a que pertenezcan o aunque no estén afiliados a ningún partido político. La mayoría, en su decisión, ordena remover este símbolo de una superada perspectiva docente. Confiamos que esta errada decisión no culmine en la supresión del mensaje prístino para el cual el Departamento quiso usarle.