López Feliciano, Juez Ponente
*753 TEXTO COMPLETO DE LA SENTENCIA
Recurre ante nos el señor Ardin Terón Santiago (el recurrente) y solicita que revoquemos la determinación administrativa hecha por la Oficina de Ética Gubernamental del Estado Libre Asociado de Puerto Rico (la recurrida o la O.E.G.) en el caso de Oficina de Etica Gubernamental v. Ardin Terón Santiago, cáso número 03-66. Dicha determinación se consignó en la resolución y resolución en reconsideración emitidas el 10 de febrero y 4 de junio de 2004, notificadas el 20 de febrero y 7 de junio de 2004 respectivamente.
Mediante dichas resoluciones, la O.E.G. halló incurso al recurrente por violaciones al Artículo 3.2 (c) de la Ley de Ética Gubernamental, Ley Núm. 12 de 24 de julio de 1985, según enmendada (Ley Núm. 112); y a los artículos 6(A)(1), 6 (A)(6) y 6 (F) del Reglamento de Ética Gubernamental, Núm. 4827 de 20 de noviembre de 1992 (Reglamento Núm. 4827). Consecuentemente, la O.E.G. le impuso al recurrente una multa administrativa de dos mil quinientos catorce dólares con ocho centavos ($2,514.08).
Con la comparecencia de ambas partes y con el beneficio del expediente administrativo sometido, procedemos a disponer del recurso.
I
Los Hechos e Incidentes Procesales Pertinentes
El recurrente se desempeñó como director ejecutivo del Consejo de Desarrollo Ocupacional y Recursos Humanos (en adelante el Consejo), dependencia adscrita al Departamento del Trabajo y Recursos Humanos.
El recurrente era el único funcionario en dicho Consejo que tenía asignada una tarjeta de crédito corporativa para satisfacer gastos oficiales.
Así las cosas y luego de recibir una carta del Contralor de Puerto Rico y de obtener la información y evidencia pertinente, el Procurador de Ética Gubernamental radicó ante la O.E.G. una querella contra el recurrente en la cual le imputó haber cargado a la tarjeta de crédito oficial que le proveyó la agencia el consumo de bebidas alcohólicas, ascendente a un total de $244.76; y que, además, cargó a dicha tarjeta bienes y servicios de índole personal, consistente de un abrigo de invierno, por el cual se pagó $126.60. Además, que satisfechos dichos cargos con fondos públicos, el recurrido no reembolsó al Consejo los mismos.
En consideración a lo antes expuesto, el Procurador imputó al recurrente las infracciones antes relacionadas a la Ley Núm. 112, supra, y al Reglamento Núm. 4827, supra.
Luego de los trámites administrativos de rigor, el 13 de noviembre de 2003, la O.E.G. celebró una audiencia en su fondo para atender la querella en cuestión. El recurrente compareció a dicha audiencia y tuvo la oportunidad de ser oído.
El 13 de enero de 2004, el oficial examinador que presidió dicha audiencia emitió el informe correspondiente. *754 En éste se concluyó que a tenor con las disposiciones legales y reglamentarias aplicables y con la evidencia sometida en sustentación de la querella, el recurrente había violado el Artículo 3.2 (c) de la Ley Núm. 12, supra; y los artículos 6(A)(1), 6 (A)(6) y 6 (F) del Reglamento Núm. 4827. Recomendó el Oficial Examinador que se le impusiera una multa de $2,514.08.
Mediante resolución dictada el 10 de febrero de 2004 y notificada el 20 de febrero siguiente, el Director Ejecutivo de la O.E.G. adoptó en su totalidad el informe y las recomendaciones del Oficial Examinador.
El 9 de marzo de 2004, el recurrente solicitó reconsideración de dicha resolución.
El 4 de junio de 2004, con notificación a las partes el 7 de junio siguiente, el Director Ejecutivo de la O.E. G. se reiteró en la resolución del 10 de febrero de 2004.
El 6 de julio de 2004 presentó ante este foro apelativo recurso de revisión.
II
La Cuestión Planteada
En el ejercicio de nuestra facultad revisora, debemos determinar si actuó correctamente la O.E.G. al resolver, luego del trámite administrativo de rigor, que el recurrente violó disposiciones de la Ley Núm. 12, supra, y del Reglamento Núm. 4827, supra, cuando en el desempeño de su función pública cargó a una tarjeta de crédito provista por el gobierno el consumo de bebidas alcohólicas y la adquisición de ciertos bienes de uso personal. 
En su solicitud de revisión, el recurrente plantea las siguientes defensas o cuestionamientos contra la determinación de la O.E.G., imputándole a dicha agencia error:

“1. Ausencia de disposiciones legales que prohíban a los funcionarios públicos adquirir con fondos públicos bebidas alcohólicas “o un abrigo

2. Prescripción de la acción en su contra por parte de la O.E.G.

3. Incuria por parte de la O.E. G. en la acción instada en su contra.

4. Aplicación de la doctrina de vaguedad en la Ley Núm. 12, supra; y en Reglamento Núm. 4827, supra.

5. Aplicación de la doctrina de ambigüedad en la Ley Núm. 12, supra; y en Reglamento Núm. 4827, supra.

6. Falta de madurez para instar la querella en su contra.

7. Interpretación errónea de la ley que crea el Consejo de Desarrollo Ocupacional y Recursos Humanos, Ley Núm. 60 de 2 de septiembre de 1992.

8. Ausencia de ley o reglamento que prohíba la adquisición de los servicios y bienes aludidos en la querella.

9. Inferencia errónea de la O.E.G. de los hechos establecidos en la vista administrativa celebrada para atender la facultad contra el recurrente.

10. Discreción del Consejo de Desarrollo Ocupacional y Recursos Humanos para autorreglamentarse. ”

*755 III
Análisis de la Cuestión Planteada y Conclusiones de Derecho
Examinado el expediente administrativo en su totalidad, surge del mismo que las determinaciones de la O. E.G. con relación a las actuaciones del recurrente se ajustaron correctamente al marco del derecho aplicable al asunto, por lo que a continuación exponemos nuestros fundamentos para confirmar la resolución de la cual se recurre.
A
La Ley de Ética Gubernamental y su Reglamento
La Ley Núm. 12 supra, en su exposición de motivos establece que son los objetivos del estatuto prevenir y sancionar el comportamiento de aquellos servidores públicos que en el desempeño de sus funciones inciden en violación de los principios básicos de una ética de excelencia.
Al interpretar los propósitos de esta Ley, nuestro Tribunal Supremo ha sido enfático al señalar que:

“Sabido es que uno de los propósitos principales para la creación de la Ley de Ética Gubernamental fue promover y preservar la integridad de los servidores públicos y de las instituciones de gobierno. O.E.G. v. Cordero Santiago, res. El 21 de agosto de 2001, 2001 J.T.S. 119. De los informes conjuntos sometidos por la Cámara de Representantes, previos a la aprobación de esta pieza legislativa, surge que el fin de la misma era, entre otros, “prevenir, erradicar y penalizar cualquier comportamiento delictivo por cualquier funcionario gubernamental” que “vulnerje] los principios básicos de una ética por excelencia”. Uno de los males que se intenta combatir, a través de esa ley, es el lucro que los funcionarios públicos puedan derivar del dinero del pueblo. Véase, Exposición de Motivos, 1985, Leyes de Puerto Rico, Núm. 12.

Del mismo modo, se desprende, tanto de los debates legislativos que anteceden esta ley como de su exposición de motivos, que el propósito de la misma es atacar y prevenir la corrupción del gobierno, la conducta ilegal de los empleados públicos, los conflictos de intereses, el abuso de poder y el ejercicio de influencias indebidas. Esta ley se enfoca, además, en evitar no sólo la conducta impropia de los servidores públicos, sino también la apariencia de conducta impropia que éstos puedan exhibir.

A tono con dicho objetivo, tanto la Ley de Ética como su Reglamento, contienen disposiciones de carácter preventivo y profiláctico que prohíben situaciones con gran potencial de ocasionar efectos negativos a la imagen de integridad de los servidores públicos y de imparcialidad de los procesos gubernamentales. Es importante aclarar que el carácter preventivo de estas medidas radica en evitar lesiones mayores de la confianza pública prohibiendo conductas que de por sí son nocivas. Así se reconoció en el Artículo 2 del Reglamento de Ética al señalarse, como propósito, que:

‘Es esencial que los funcionarios y empleados del servicios público mantengan principios del más alto grado de honestidad, integridad, imparcialidad y conducta para garantizar el debido funcionamiento de las instituciones gubernamentales y conservar la confianza de los ciudadanos en su gobierno. Evitar una conducta impropia y conflictos de intereses por parte de los servidores públicos es indispensable para mantener estos principios...’.” 

Para darle vigencia a los propósitos antes expuestos, el Artículo 3.2 (c) de la Ley Núm. 12, supra, 3 L.P.R.A. see. 1822, en lo pertinente al caso de autos establece que:

“Ningún funcionario o empleado público solicitará ni aceptará bien alguno de valor económico como pago por realizar los deberes y responsabilidades de su empleo, aparte del sueldo, jornal o compensación a 
*756
que tiene derecho por su función o empleo público.” 

Al recurrente, la O.E.G. le imputó violaciones a los Artículos 6 (A) (1), 6 (A) 6, 6 (F) del Reglamento Núm. 4827. Dicho Artículo 6, en lo aquí pertinente, establece ciertas prohibiciones en la conducta de los servidores públicos, al disponer lo siguiente:

“Todo servidor público deberá:

(A) Evitar tomar cualquier acción, esté o no específicamente prohibida por este Reglamento, que pueda resultar en o crear la apariencia de:

1) Usar las facultades de su cargo, propiedad o fondos públicos para un fin privado.

2)...

3) Impedir o entorpecer la eficiencia y la economía gubernamental.

4)...

5) Afectar adversamente la confianza del público en la integridad y honestidad de las instituciones gubernamentales.

6)...

(H) Cumplir con las leyes, reglamentos y normas que le pueden ser aplicables en el desempeño de sus funciones”.

El fin público de los fondos gubernamentales lo define el Artículo 3(H) del Reglamento Núm. 4827, supra, como “los objetivos que redundan en beneficio de la salud, seguridad, moral y bienestar general de todos los ciudadanos. ”
Los siguientes criterios fueron esbozados por el Tribunal Supremo a los fines de determinar cuándo es que un desembolso de fondos del gobierno responde a un fin público:

“1. Redunda en beneficio de la salud, la seguridad, la moral y el bienestar general de todos los ciudadanos.

2. Está destinado a una actividad de carácter público o semipúblico.

3. Promueve los intereses y objetivos de la entidad gubernamental, en consonancia con sus deberes y funciones o política pública establecida.

4. Promueve programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas o deportivas.

5. Promueve el establecimiento, modificación o cambio de una política gubernamental”. 

Del articulado legal y reglamentario antes citado y de la definición jurisprudencial de lo que es la utilización *757 de fondos gubernamentales para un fin público, claramente se colige que aquel servidor público que en el ejercicio de un cargo público utiliza fondos del erario para un fin privado, incumple con el mandato ético.
Los elementos constitutivos de una infracción al Artículo 3.2(c) de la Ley Núm. 12, supra, y a los artículos 6(A)(1), 6(A)(6) y 6(F) del Reglamento Núm. 4827 pueden contraerse a los siguientes:

“i. Que se trate de un funcionario o empleado público;

ii. Que éste haya utilizado sus deberes, facultades de su cargo, propiedad o fondos públicos;

Hi. Con elfin de proporcionarse a sí mismo, o algún miembro de su familia o a otra persona;

iv. Alguna ventaja, beneficio o privilegio”. 

B
La Revisión Judicial de las Determinaciones de Agencias Administrativas
La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto 1988, según enmendada, 3 L.P.R.A. see. 2175, establece el alcance de la revisión por los foros apelativos de las determinaciones de las agencias administrativas, al disponer que:

“El tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.

Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal”.

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que éstas desempeñan sus funciones conforme a la Ley. Torres Acosta v. Junta, 161 D.P. R. _ (2004), 2004 J.T.S. 71; Miranda v. C.C.C., 141 D.P.R. 775, 786 (1996). De ahí, que la revisión judicial debe limitarse a determinar si la agencia actuó arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituye un abuso de discreción. Torres Acosta v. Junta, supra; Franco v. Departamento de Educación, 148 D.P.R. 703, 710 (1998).
La facultad de revisión judicial en estos casos ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado; (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba; y (3) si las conclusiones de derecho del organismo administrativo son correctas. See. 4.5 de la Ley Núm. 70, supra; P.R.T.C. v. J. Reg. Tel. de P.R. 151 D.P.R. _ (2000), 2000 J.T.S. 98; Mun. de S.J. v. J.C.A., 149 D.P.R. 263, 279-280 (1999); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 674 (1997). El récord o expediente administrativo constituirá la base exclusiva para la acción de la agencia en un procedimiento adjuticativo y para la revisión judicial ulterior. Torres Acosta v. Junta, supra; Mun. de S.J. v. J.C.A., supra, pág. 280.
Es norma reiterada que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo. Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Asoc. Vec. H. San Jorge v. U. Med. Corp., supra, pág. 72; E.L.A. et als. v. Malavé, 157 D.P.R. _ (2002), 2002 J.T.S. 103; Domínguez v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397 (1999); T. JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 80 (1999).
*758 C
Análisis y Conclusión
El expediente administrativo sometido a nuestra consideración justifica concluir que el recurrente, aprovechándose de su posición como Director Ejecutivo del antes mencionado Consejo, se las arregló para gestionar y obtener una tarjeta de crédito que debía destinarse en su utilización al pago de cualquier gasto razonable vinculado a las operaciones de dicha agencia que constituyera un fin público. No obstante, con juicio equivocado y desinformado, el recurrente adquirió bienes para su uso personal y de terceros, sin que mediara un fin público.
Ninguna de las explicaciones ofrecidas por el recurrente ante la (DtÉ.Cr: y ante este foro apelativo, para librarse de responsabilidad por sus violaciones a la Ley Núm. 12, supra, y al Reglamento Núm. 4827, supra, son aceptables y convincentes, veamos porqué:

“1. Al recurrente le fue asignada la tarjeta de crédito en cuestión para ser utilizada confines públicos.

2. Al autorizarse la tarjeta, en ausencia de reglamentación del Consejo a esos efectos, a la utilización de la misma le aplicaba como norma o guía general el Reglamento Núm. 45 del Departamento de Hacienda de 24 de noviembre de 1993, sobre "Gastos de Representación de los Secretarios de Gobiernos y Jefes de Dependencias’’. Este reglamento establece que son gastos de representación aquellos propios y necesarios conducentes al logro de los propósitos de la dependencia e incurridos en actividades con fines de promoción industrial, instrucción, turismo y otros fines similares. Estos gastos deben estar íntimamente relacionados con el bienestar o interés públicos y ser compatibles con las funciones específicas de la dependencia. 

3. El Reglamento 45 específicamente prohíbe reclamar como gastos de representación el pago de bebidas alcohólicas, regalos, coronas, o arreglos florales, esquelas, tarjetas de felicitación u otros gastos de naturaleza similar.

4. Como antes dicho, dado que el Consejo no aprobó ningún reglamento interno para particularizar en sus operaciones el control de gastos de representación, el aludido Reglamento Núm. 45 debió ser considerado por el Consejo y sus funcionarios, incluido el recurrente, como guía o norma reguladora general para ese tipo de gasto. 

5. El recurrente no se ocupó de constatar la reglamentación gubernamental vigente sobre la materia y tampoco de reconocer la existencia de la misma. Por tanto, utilizó la tarjeta de crédito bajo sus propios criterios personales, olvidando que dicho instrumento era de exclusivo uso institucional. 

6. Al adquirir un abrigo de invierno, para un viaje oficial al exterior, debió tomar en cuenta la existencia del Reglamento Núm. 37 del Departamento de Hacienda, sobre “Gastos de Viajes y Dietas”, el que advierte que no pueden adquirirse piezas de vestir para viajes oficiales. Una sencilla consulta al Departamento de Hacienda hubiera prevenido al recurrente sobre este, particular. El hecho de que hubiera devuelto dicho bien mueble al cesar en el cargo público, no lo exime de responsabilidad por su erróneo juicio. ”

Hemos estudiado y evaluado las diez defensas o explicaciones ofrecidas por el recurrente en la instancia administrativa y ante este foro, para excusar su responsabilidad por el uso indebido de fondos públicos, y las consideramos frívolas, inmeritorias y carentes de sustancia. Ello es así por las siguientes razones:

“1. Contrario a los planteamientos del recurrente, existen normas reglamentarias de aplicación general en el gobierno del Estado Libre Asociado de Puerto Rico y sus dependencias que prohíben la adquisición de bebidas alcohólicas y bienes personales con fondos públicos.

*759 2. Las infracciones a la Ley Núm. 12, supra, y al Reglamento 4827, supra, no tienen término prescriptivo para su encauzamiento en el foro administrativo. En estos casos se aplica el criterio practico de un término razonable, el cual medió en el presente caso. 

3. La defensa de incuria tampoco es pertinente al caso de autos. Ciertamente, el recurrente no estableció ante la O.E.G. que cualquier transcurso del. tiempo entre las infracciones y el procedimiento administrativo en su contra le causara perjuicio o que tuviera efectos adversos sobre intereses privados o públicos involucrados. 

4/5. Las normas éticas por las cuales fue investigado y hallado incurso el recurrente, en forma alguna adolecen de vaguedad o ambigüedad. Tanto el Artículo 3.2 (c) de la Ley Núm. 12, supra, como el Artículo 6(A) del Reglamento Núm. 4327, supra, han sido reconocidos como válidos y razonables por el Tribunal Supremo de Puerto Rico. 

6. La contención del recurrente de que el asunto en su contra promovido por la O.E.G. no estaba maduro para el trámite administrativo, porque el mismo se basaba en un informe al Contralor de Puerto Rico, es inmeritoria. Como correctamente señala la O.E.G., la función del Contralor es identificar si las transacciones gubernamentales se han hecho de acuerdo con la ley. Esto es independiente a cualquier acción que pueda tomar bien el Departamento de Justicia, el Departamento de Hacienda, la O.E.G. o cualquier otra agencia gubernamental para vindicar actuaciones contra los mejores intereses del gobierno. La O.E.G. actuó cuando tenía que actuar.

7. La alegación del recurrente de que las determinaciones de hechos de la O.E.G. no están sostenidas por la prueba en la instancia administrativa, es absolutamente inmeritoria. Un examen minucioso de la transcripción de la vista administrativa celebrada ante un oficial examinador de la O.E.G., demuestra lo contrario. Las determinaciones de hechos de la O.E.G. están ampliamente y sin lugar a dudas sostenidas por la prueba y por el expediente administrativo, al igual que sus conclusiones de derecho. Véase sección 4.5 de la Ley Núm. 70, supra; P.R.T.C. v. J. Reg. Tel. de P.R., supra; Mun. de S.J. v. J.C.A., supra; Misión Ind. P.R. v. J. P. y A.A.A., supra.
8/9/10. Son también totalmente inmeritorios y frívolos los planteamientos del recurrente imputándole error a la O.E.G. en la interpretación de la Ley Núm. 60, supra; en las inferencias hechas de los hechos establecidos en la vista administrativa; y en la supuesta absoluta discrecionalidad del Consejo para autorreglamentarse en sus operaciones. Por tanto, no es necesario analizarlos y discutirlos en más detalle. ”
IV
Disposición del Recurso
Por los fundamentos antes expuesto, se confirma la resolución de lá Oficina de Ética Gubernamental mediante la cual se encontró incurso al señor Ardin Terón Santiago de violaciones a los artículos 3.2 (C) de la Ley de Ética Gubernamental y a los artículos 6 (A) (1), 6 (A) 6 y 6 (F) del Reglamento de Ética Gubernamental, imponiéndole un multa administrativa de $2,514.08.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 13
í. Hasta la aprobación del Plan de Reorganización Núm. 2 del 4 de mayo de 1994, 3 L.P.R.A. Ap. VI, y conforme a su Ley *760 Orgánica, Ley Núm. 60 de 2 de septiembre de 1992, 18 L.P.R.A. see. 1581 et seq., este Consejo se denominaba “Consejo de Formación Tecnológico-Ocupacional."
2. Dichos cargos fueron pagados, en consecuencia, con fondos públicos.
3. O.E.G. v. Rodríguez Martínez, 159 D.P.R. _ (2003); 2003 J.T.S. 51.
4. Como bien señala la O.E.G. en su alegato, el génesis de esta disposición estatutaria emana del Artículo VI See. 9, de la Constitución del Estado Libre Asociado de Puerto Rico, cuando dispone que “[s]ólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las Instituciones del Estado y en todo caso por autoridad de ley”.
5. P.P.D. v. Gobernador 1, 139 D.P.R. 643, 691 (1995).
6. O.E.G. v. Rodríguez Martínez, supra.
7. Más que a nadie, debe aplicar a los funcionarios y empleados públicos la máxima consignada en el Artículo 2 de nuestro Código Civil, 31 L.P.R.A. see. 2, que dispone: “La ignorancia de las leyes, no excusa de su cumplimiento".
8. El Artículo 7(e) de la ley que crea el Consejo de Formación Tecnológico-Ocupacional, Ley Núm. 60, supra, dispone que el presidente del Consejo tiene que “[s]ometer para aprobación del Consejo los reglamentos necesarios para lograr los objetivos y propósitos de esta ley”.
El hecho de que el Consejo tuviera autoridad para reglamentar sus operaciones y funcionamiento, infra, en ausencia de estos, debió guiarse por aquellos reglamentos in pari materia adoptados por la principal agencia reguladora de las finanzas y contabilidad del gobierno, o sea, el Departamento de Hacienda.
9. Esta actuación contrasta con lo que la ciudadanía espera de cualquier funcionario público prudente y razonable y de rango administrativo como el que ocupaba el recurrente: Estar consciente que los fondos públicos no pueden ser utilizados para satisfacer gastos de la naturaleza de los aquí bajo cuestionamiento.
10. Véase Buena Vista Dairy, Inc. v. J.R.T., 94 D.P.R. 624, 630 (1967).
11. Véase IM Winner, Inc, v. Mun. de Guayanilla, 151 D.P.R. _ (2000); 2000 J.T.S. 86.
12. Véase O.E.G. v. Rodríguez Martínez, supra.