Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| ROD LUIS RODRÍGUEZ ARROYO<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026AP00150 | *Revisión Decisión Administrativa procedente del Departamento de Corrección y Rehabilitación*<br><br>Caso núm.:<br><br><br>Sobre:<br>Revisión de Custodia |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 9 de abril de 2026.

El 12 de febrero de 2026, el señor Rod Luis Rodríguez Arroyo (el señor Rodríguez Arroyo o el recurrente) presentó ante nos una *Revisión Administrativa*[1] en la que solicitó que revoquemos la *Resolución* emitida el 8 de octubre de 2025, por el Comité de Clasificación y Tratamiento de la Institución de Bayamón 292 adscrita al Departamento de Corrección y Rehabilitación (DCR o parte recurrida).[2]

En el aludido dictamen, el DCR determinó que, el recurrente debía mantenerse en custodia máxima ante su desobediencia a las normas institucionales y la comisión de delitos dentro de la institución carcelaria.

## I.

El caso de epígrafe tuvo su origen cuando el 4 de septiembre de 2025, el señor Rodríguez Arroyo instó un *Informe para evaluación*

---

[1] Por el recurrente recurrir de una Resolución administrativa, acogeremos el recurso como una Revisión Judicial. Por razones de economía procesal, hemos decidido conservar la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

[2] *Véase* expediente administrativo, *Resolución.*

*del plan institucional* en el que solicitó un cambio de custodia.[3] Ello, pues el recurrente fue sentenciado a cumplir cien (100) años por cometer los siguientes delitos, asesinato en segundo grado, secuestro agravado, conspiración, tentativa de asesinato, agresión agravada, posesión y transportación de armas sin licencia y motín. Asimismo, el señor Rodríguez Arroyo estaba cumpliendo una sentencia de ciento sesenta (160) meses concurrentes por posesión e intención de distribuir menos de cinco (5) kilogramos de cocaína en una institución federal.

Evaluado el expediente del recurrente, el 8 de octubre de 2025, notificada el 28 de octubre de 2025, el DCR emitió una *Resolución* en la que formuló cincuenta y tres (53) determinaciones de hechos en las que esbozó el historial de conducta del recurrente en la institución carcelaria.[4] El DCR determinó que, en el transcurso en el que el señor Rodríguez Arroyo llevaba en la cárcel, este ha mostrado una conducta inconsistente. Pese a las terapias de rehabilitación que le proveyó la parte recurrida, el señor Rodríguez Arroyo mostró una conducta desobediente. Consecuentemente, ordenó que, el recurrente se mantuviera en máxima custodia.

Insatisfecho, el 28 de octubre de 2025, el recurrente radicó una *Petición de reconsideración* en la que sostuvo que, las determinaciones de hechos esbozadas por la parte recurrida requieren reclasificar la custodia del señor Rodríguez Arroyo.[5] Ello, pues la denegatoria del DCR no fue fundamentada en el expediente que tuvo ante sí. Asimismo, alegó que, en la custodia máxima no hay programas para ayudar a rehabilitar al señor Rodríguez Arroyo. Por ende, adujo que, ante la buena conducta del señor Rodríguez Arroyo este debe estar en custodia mediana.

---

[3] *Véase* expediente administrativo, *Informe para evaluación del plan institucional.*
[4] *Véase* expediente administrativo, *Resolución.*
[5] *Véase* expediente administrativo, *Petición de reconsideración.*

Así las cosas, el 9 de diciembre de 2025, recibida el 13 de enero de 2026, el DCR emitió un dictamen en el que determinó no acoger la solicitud de reconsideración. Dicha determinación se basó en los documentos que obraban en el expediente demostraban que el confinado tenía una tendencia marcada a desobedecer las normas y reglas de la institución y concurrió con la determinación del Comité en cuanto mantener al confinado en custodia máxima. [6]

Inconforme, el 12 de febrero de 2026, el señor Rodríguez Arroyo presentó un recurso de *Revisión Administrativa* en la que coligió los siguientes señalamientos de error:

> Primer error: Erró el Comité de clasificación y tratamiento y la Oficina de Clasificación y tratamiento al "revertir" la custodia mediana concedida el 21 de noviembre de 2024 basándose en "instrucciones impartidas" y sin informar al Sr. Rodriguez Arroyo cuales eran las determinaciones de hechos en la cual se basaba dicha de[c]isión.

> Segundo error: Erró el Comité de Clasificación y Tratamiento y la Oficina de Clasificación y Tratamiento mediante la utilización de alegación de hechos no probados y/o de hechos incompletos para fundamentar la clasificación de custodia máxima en el caso del Sr. Rodríguez Arroyo.

En cumplimiento con nuestra *Resolución*, el 12 de marzo de 2026, la parte recurrida radicó un *Escrito en cumplimiento de Resolución y solicitud de desestimación*.

Con el beneficio de la comparecencia de las partes y examinado la totalidad del expediente y los escritos, procedemos a denegar la solicitud de desestimación presentada por el DCR, y a confirmar el dictamen recurrido.

**II.**

**A.**

La jurisdicción es el poder o la autoridad que posee un tribunal para considerar y decidir casos o controversias con efecto vinculante entre las partes. *MCS Advantage, Inc. V. Fossas Blanco*, 211 DPR 135, 144 (2023); *Adm. Terrenos v. Ponce Bayland*, 207 DPR 586, 600 (2021); *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374,

---

[6] *Véase* expediente administrativo, Anejo I-B, pág. 15.

385–386 (2020); *Beltrán Cintrón et al. v. ELA et al.*, 204 DPR 89, 101 (2020). Los tribunales estamos impedidos de atender controversias en las que carezcamos de jurisdicción sobre la materia. *MCS Advantage, Inc. V. Fossas Blanco, supra*, pág. 144-145. La jurisdicción sobre la materia ha sido definida como "la capacidad del Tribunal para atender y resolver una controversia sobre un aspecto legal". *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 708 (2014). Los asuntos relacionados a la jurisdicción son privilegiados y deben resolverse con preferencia a cualquiera otro asunto. *SLG Szendrey Ramos v. F. Castillo, supra*, pág. 882. Los tribunales deben examinar su propia jurisdicción, así como del foro de donde procede el recurso ante su consideración. *SLG Szendrey Ramos v. F. Castillo, supra*, pág. 883. Es por ello que, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). Por tal razón, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y que tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *Pueblo v. Torres Medina*, 211 DPR 950 (2023). Los tribunales no tienen discreción para asumir jurisdicción donde no la tienen. *SLG Szendrey Ramos v. F. Castillo*, 169 DPR 873, 882 (2007); *Morán v. Martí*, 165 D.P.R. 356 (2005).

**B.**

El Derecho Administrativo regula "los trámites, los poderes y las responsabilidades de las agencias administrativas, las exigencias legales para efectuar tales acciones y los remedios que tienen disponibles las partes afectadas por la actuación de una agencia". *Autoridad de Carreteras y Transportación v. Programa de Solidaridad UTIER*, 210 DPR 897, 907 (2022). La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9601, *et.seq.*, rige un procedimiento

uniforme de la revisión judicial para cuestionar la determinación de una agencia o la acción tomada por la agencia al adoptar un reglamento. *Vitas Health Care v. Hospicio La Fe et al.*, 190 DPR 56, 66 (2014); *Autoridad de Carreteras y Transportación v. Programa de Solidaridad UTIER*, *supra*, pág. 907. Con ello la Sección 3.15 de la LPAU, *supra* sec. 9655 establece que,

> La parte adversamente afectada por una resolución u orden parcial o final podrá, dentro del término de veinte (20) días desde la fecha de archivo en autos de la notificación de la resolución u orden, presentar una moción de reconsideración de la resolución u orden. La agencia dentro de los quince (15) días de haberse presentado dicha moción deberá considerarla. **Si la rechazare de plano o no actuare dentro de los quince (15) días, el término para solicitar revisión comenzará a correr nuevamente desde que se notifique dicha denegatoria o desde que expiren esos quince (15) días, según sea el caso.** Si se tomare alguna determinación en su consideración, el término para solicitar revisión empezará a contarse desde la fecha en que se archive en autos una copia de la notificación de la resolución de la agencia resolviendo definitivamente la moción de reconsideración. Tal resolución deberá ser emitida y archivada en autos dentro de los noventa (90) días siguientes a la radicación de la moción de reconsideración.

(Énfasis nuestro).

Una agencia tiene quince días para tomar alguna acción ante una moción de reconsideración que fue presentada oportunamiente. *Assoc. Condomines v. Meadows Dev.*, 190 DPR 843, 849 (2014). Ahora bien, si un organismo administrativo rechazara de plano o no actuar ante una moción de reconsideración y se entenderá rechazada de plano. *Assoc. Condomines v. Meadows Dev*, supra, págs. 849-850. Si una agencia acoge la moción de reconsideración, entonces tiene noventa días para resolverla o perderá su jurisdicción. *Assoc. Condomines v. Meadows Dev.*, *supra*, 849. Si transcurren los noventa días sin que el ente administrativo se pronuncie, comenzarán a transcurrir el término para acudir en revisión judicial. *Assoc. Condomines v. Meadows Dev.*, *supra*, 849.

En *Flores Concepción v. Taíno Motors*, 168 DPR 504, 522 (2006) EL Tribunal Supremo expresó lo siguiente,

> El hecho de que una agencia administrativa pueda acoger una moción de reconsideración —luego de transcurrido el plazo de quince días que se establece para que la agencia la atienda y antes de que se presente un recurso judicial en revisión de la decisión administrativa emitida—ciertamente no produce incertidumbre alguna respecto a cuándo comienza a transcurrir el término para recurrir en revisión judicial. Sólo cuando todavía no ha transcurrido el término para acudir en revisión ante el foro judicial y no se haya presentado el recurso de revisión judicial, es que la agencia tendría jurisdicción para tomar alguna determinación sobre la moción de reconsideración presentada fuera del mencionado término de quince días.

Con ello, una parte tiene derecho a cuestionar una determinación de una agencia mediante un recurso de revisión judicial. *Autoridad de Carreteras y Transportación v. Programa de Solidaridad UTIER, supra,* pág. 908; *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014). El mecanismo de revisión judicial se extiende a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por las agencias o funcionarios administrativos. *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 378 (2024). El escrito de revisión judicial deberá presentarse dentro del término de treinta (30) días a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de la LPAU cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. Sección 4.2 *supra* sec. 9672; Regla 57 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 216 DPR __ (2025).

**C.**

La Constitución de Puerto Rico establece la política pública de "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1, ed. 2016, pág. 455. *Lebrón Laureano v. Departamento de Corrección y Rehabilitación*, 209 DPR 489, 499 (2022)

Para hacer valer la política pública, se promulgó el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2-2011 (3 LPRA Ap. XVIII) (Plan de Reorganización). Dicho Plan de Reorganización facultó al Departamento de Corrección con el poder de reglamentación para estructurar la política pública correccional y establecer las normas para el régimen institucional. Art. 5(c) del Plan de Reorganización, 3 LPRA Ap. XVIII. Asimismo, autorizó al Secretario del Departamento de Corrección a adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo de los organismos bajo su jurisdicción. Ello, tiene el propósito de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. Art. 7(aa) del Plan de Reorganización, 3 LPRA Ap. XVIII. La clasificación de los confinados se rige por el *Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales*, Manual Núm. 8523 de 26 de septiembre de 2014 (Manual Núm. 8523) y el *Manual para la Clasificación de Confinados*, Manual Núm. 8281 de 30 de noviembre de 2012 (Manual Núm. 8281), según enmendado por la Enmienda al *Manual para la Clasificación de Confinados*, Reglamento Núm. 9033 de 18 de junio de 2018 (Reglamento Núm. 9033). Estos delimitan la discreción de la agencia

en los asuntos relacionados con la clasificación de custodia de los confinados. El Manual Núm. 8281, *supra,* define la clasificación objetiva como un proceso confiable de clasificación inicial y reclasificación periódica mediante la que se reúne a los confinados y se les subdivide en grupos. Manual Núm. 8281, *supra,* pág. 5. Asimismo, define las modificaciones discrecionales como conjunto de factores específicos de clasificación que el personal puede usar para modificar la puntuación de clasificación de un confinado, pero solamente con la autorización del supervisor de clasificación. Id. pág. 8. Por otro lado, define la reclasificación r]revisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también a su nivel de custodia". Íd., pág. 12.

El Art. IV, Sec. 7(11), del Manual Núm. 8281, establece que la reevaluación de custodia no necesariamente tiene como resultado un cambio en la clasificación de custodia. Íd., pág. 48. El objetivo es que se clasifique a los confinados con trasfondos similares a niveles de custodia parecidos. Íd., pág. 16. Este proceso de evaluación del nivel de custodia solicita que un Técnico Sociopenal llene el Formulario de Reclasificación de Custodia para confinados sentenciados, a saber: la Escala de Reclasificación. Apéndice K, Sec. 7(III)(C)(6) del Manual Núm. 8281, *supra.*

El Manual Núm. 8281, *supra,* establece los ocho criterios para evaluar el nivel de custodia. Estos son: (1) la gravedad de cargos/sentencias actuales; (2) el historial de delitos previos; (3) el historial de fuga, o tentativas de fuga; (4) el número de acciones disciplinarias; (5) las acciones disciplinarias previas serias; (6) las sentencias anteriores por delitos graves como adulto (de los últimos cinco años); (7) la participación de programas/tratamiento, y (8) la edad actual. Sec. II Apéndice K.

La Sec. III (D) del Apéndice K, establece las modificaciones discrecionales para un nivel más alto de custodia. El manual

dispone que estas modificaciones discrecionales deben estar basadas en documentación escrita. Entre las modificaciones discrecionales se encuentra: (1) gravedad del delito; (2) historial de violencia excesiva; (3) afiliación prominente con gangas; (4) confinado de difícil manejo; (5) grado de reincidencia; (6) riesgo de fuga; (7) comportamiento sexual agresivo; (8) trastornos mentales o ajustes emocionales; (9) representa amenaza o peligro; (10) **desobediencia antes las normas o rehusarse al plan de tratamiento** y (11) reingreso por violación de normas. (Énfasis nuestro).

### D.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA sec. 9601 *et seq.* establece el marco normativo que rige la revisión judicial de las decisiones emitidas por las agencias administrativas. *Otero Rivera v. Bella Retail Group, Inc.,* 214 DPR 473, 484 (2024). El propósito de la revisión judicial es limitar la discreción de las agencias y asegurarse de que éstas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp. y Scotiabank,* 173 DPR 870, 891-892 (2008), citando a *Torres v. Junta de Ingenieros,* 161 DPR 696, 707 (2004) y *a Miranda v. CEE,* 141 DPR 775, 786 (1996).

Es norma reiterada que, al revisar las determinaciones administrativas, este foro apelativo está obligado a conceder deferencia a las decisiones de las agencias en vista de que estas poseen la experiencia y el conocimiento especializado respecto a los asuntos que les han sido delegados. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, 215 DPR ___ (2025), citando a *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012). Por lo tanto, los tribunales

deben ser cautelosos al intervenir con las decisiones administrativas. *Metropolitana, SE v. ARPE,* 138 DPR 200, 213 (1995); *Viajes Gallardo v. Clavell,* 131 DPR 275, 289–290 (1992).

En virtud de lo anterior, el criterio rector al momento de pasar juicio sobre una decisión de la agencia recurrida es la razonabilidad de la actuación cuestionada. *Katiria´s Café, Inc. v. Municipio Autónomo de San Juan, supra.* Así pues, debemos evaluar que no se haya actuado de manera arbitraria o ilegal, o de forma tan irrazonable que constituya un abuso de discreción. *Torres Rivera v. Policía de PR, supra.* Por consiguiente, no puede otorgárseles un "sello de corrección automático bajo el pretexto de deferencia a aquellas determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a Derecho". *Capote Rivera v. Voilí Voilá Corp.,* 213 DPR 743, 754 (2024). Es decir, si bien debemos concederles una amplia deferencia a las determinaciones de las agencias administrativas, dicha norma no es absoluta. *Id.*

A esos efectos, la deferencia cede cuando: "(1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o los reglamentos; (3) ha mediado una actuación arbitraria, irrazonable o ilegal; o (4) la actuación administrativa lesiona derechos constitucionales fundamentales". *Id.,* citando a *Super Asphalt v. AFI y otro,* 206 DPR 803, 819 (2021).

El alcance de la revisión judicial de las determinaciones administrativas se extiende a los siguientes tres aspectos: "(1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho del ente administrativo fueron

correctas". *Rolón Martínez v. Supte. Policía, supra,* pág. 36, citando a *Pagán Santiago et al. v. ASR, supra.*

Las determinaciones de hechos de las agencias no serán alteradas por los tribunales "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero v. Toyota,* 163 DPR 716, 727-728 (2005); *Domínguez v. Caguas Expressway Motors, Inc.,* 148 DPR 387, 397 (1999). A estos fines, se ha definido evidencia sustancial como "aquella [evidencia] pertinente que una mente razonable pueda aceptar como adecuada para sostener una conclusión". *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999).

Para establecer la alegación de ausencia de tal evidencia sustancial, la parte afectada debe demostrar que existe "otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial hasta el punto de que se demuestre claramente que la decisión [de la agencia] no está justificada por una evaluación justa del peso de la prueba". *Metropolitana SE v. ARPE,* 138 DPR 200, 213 (1995) (citando a *Hilton Hotels International Inc. v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1953)).

En otras palabras, la parte afectada por la determinación de la agencia viene obligada a derrotar la presunción de corrección de los procesos y de las decisiones administrativas. *Otero v. Toyota, supra,* pág. 728; *Domínguez v. Caguas Expressway Motors, Inc., supra,* págs. 397-398. Para lograr ese objetivo, tiene que demostrar que existe otra prueba en el récord que menoscabe el valor probatorio de la evidencia impugnada. *Misión Ind. PR v. JP,* 146 DPR 64, 132 (1998); *Metropolitana SE v. ARPE, supra; Hilton Hotels International Inc. v. Junta de Salario Mínimo, supra.* Si la parte afectada no demuestra la existencia de esa otra prueba, las

determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez v. Depto. de Salud, supra.*

**III.**

De entrada, destacamos que, el recurrente presentó un recurso de revisión administrativa para que se revisara la *Resolución* emitida el 8 de octubre de 2025 por el DCR mediante la cual se le denegó el cambio de custodia solicitado por el señor Rodríguez Arroyo. Así, el 28 de octubre de 2025, el recurrente instó una *Petición de Reconsideración.* El 9 de diciembre de 2025, notificada el 13 de enero de 2026, el DCR denegó la solicitud de reconsideración. Del documento se desprende que, la supervisora consideró la solicitud del confinado y determinó que estaba de acuerdo con la decisión del Comité de mantener el nivel de custodia máximo. Por tanto, dicha reconsideración fue atendida.

En el caso de autos, la parte recurrente planteó que, el DCR incurrió en una violación del debido proceso de ley al no establecer en sus determinaciones de hechos cuales fueron las instrucciones impartidas que conllevaron que se revirtiera una reclamación la reclasificación a custodia mediana y que erró el CCT al fundamentar la clasificación de custodia máxima utilizando alegaciones de hechos no probados y/o incompletos.

Por su parte, la parte recurrida expone que, debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hechos de una agencia, salvo que la determinación administrativa no este basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional. De lo contrario, debemos

abstenernos en modificar las determinaciones de hechos que formule la agencia toda vez que, el foro administrativo evaluó la prueba desfilada ante su consideración.

Surge del expediente administrativo que, el recurrente cumple una sentencia de 100 años por tres (3) casos de asesinatos, secuestro agravado, conspiración y tentativa de Asesinato impuesta mediante sentencia del 28 de enero de 1997. Posteriormente, fue sentenciado el 30 de septiembre de 2003 a 2 años de prisión por el Art. 261 del Código Penal; diez (10) años por el Art. 83 del Código Penal; diez (10) años por dos (2) cargos por el Art. 95 del Código Penal y nueve (9) años por tres cargos de violación al Art. 4.5 de la Ley de Armas.

Conforme las determinaciones de hechos, el recurrente ha permanecido ingresado en custodia máxima del año 1997 hasta el 2009 cuando se acordó por el Comité de Clasificación y Tratamiento (CCT) reclasificar su custodia de máxima a mediana. No obstante, el 30 de diciembre de 2010 el recurrente incurrió en querella por código 109, posesión de teléfono celular resultando incurso en la misma y para el 11 de abril de 2011, el CCT acordó reclasificar su custodia de mediana a máxima. El 2 de octubre de 2011, el CCT reclasificó la custodia del recurrente de máxima a mediana. El 9 de marzo de 2016, el recurrente salió incurso en querella nivel I Código 109, Posesión de teléfono celular o artículo relacionado a su uso. El 29 de abril de 2016, el CCT acordó reclasificar custodia de mediana a máxima. Para el 15 de noviembre de 2018 al 27 de noviembre de 2018, el CCT ratificó custodia mediana fundamentada en que el recurrente se encontraba en la cárcel federal por delitos pendientes El 31 de enero de 2019, el recurrente incurrió en querella código 108 en la cárcel federal. El 27 de agosto de 2019, el CCT acordó reclasificar su custodia de mediana a máxima fundamentado en el informe de progreso recibido de la cárcel federal donde se evidenció

querella de nivel I por posesión de arma peligrosa. Posteriormente, el 10 de febrero de 2022, el CCT acordó reclasificar la custodia de máxima a mediana por buenos ajustes. No obstante, el 8 de junio de 2023, el recurrente fue sentenciado en la jurisdicción federal a 160 meses concurrente por su sentencia actual por conspiración tras poseer con intención de distribuir 5 kilogramos de cocaína o menos en un lugar restringido. El 21 de noviembre de 2004, el CCT acordó reclasificar la custodia de máxima a mediana, sin embargo, el 26 de noviembre de 2024, se dejó sin efecto dicha recomendación.

Ahora bien, se desprende de los acuerdos del CCT del **8 de octubre de 2025**, que el recurrente ha permanecido en custodia máxima desde el 2 de octubre de 2023. Se indica que "[a] lo largo del tiempo cumplido [el recurrente] ha demostrado ajustes institucionales inconsistentes, pues a pesar de contar con tratamiento ha incurrido en comisión de nuevos delitos encontrándose en una institución penal. Se recomienda continue integrado en el nivel de máxima restricción, donde pueda demostrar que los tratamientos de los cuales se ha beneficiado han provocado un impacto positivo en su rehabilitación."

En primer lugar, debemos señalar que, el primer error planteado por el recurrente no forma parte de los acuerdos del CCT del 8 de octubre de 2025. Según las determinaciones de hechos consignadas en la *Resolución*, las instrucciones impartidas por la Oficina de Clasificación y Tratamiento fueron consideradas en los acuerdos de la CCT para el 26 de noviembre de 2024. Por ello, este foro carece de facultad para considerar dicho planteamiento.

En torno al segundo error, la parte recurrente no estableció cuáles hechos no fueron probados por el CCT para fundamentar su determinación de mantener al señor Rodríguez Arroyo en custodia máxima ni alegó la existencia de evidencia sustancial o consideraciones que fueron descartadas por la parte recurrida. Por

el contrario, las determinaciones de hechos consignadas por el CCT en su *Resolución* sostienen su determinación de utilizar una modificación discrecional para ratificar el nivel máximo de custodia.

A la luz de los fundamentos esbozados, resolvemos que, no debemos intervenir en las determinaciones formuladas por el organismo administrativo. Ello, pues el recurrente no evidenció que las determinaciones del DCR no fueron fundamentadas en la totalidad del expediente.

## IV.

Por los fundamentos que anteceden, declaramos No Ha Lugar la desestimación del recurso y confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Rivera Marchand y la Jueza Boria Vizcarrondo concurren sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones